Stayton, Associate Justice.
For many years prior to the twenty-second day of December, 1875, the city of Laredo had and exercised the right to operate a public ferry at that place across the Rio Grande; and, at the date mentioned, a private corporation known as the Laredo Ferry Company, assumed to exercise an exclusive right there to operate a ferry. The right so claimed was based on the fact that the ferry company claimed to own the land on the margin of the river where it claimed the right to operate the ferry; that it had a license from the county court of the county, and was also empowered by its charter there to operate and have the exclusive right to operate its ferry.
So standing the matter, the board of aldermen and mayor passed a resolution on December 22, 1875, authorizing the em *573 ployment of counsel to take such steps as might be necessary to protect the city in its ferry rights. That resolution provided that the city would pay to the attorney employed a retainer of five hundred dollars; that his employment should continue for the period of five years from January 7, 1876; and that, in addition to the retainer, he should receive annually the sum of nine hundred and sixty-six dollars and sixty-six and two-thirds cents during the full period for which he was to be employed; this sum being one third of the sum which the city was then receiving from a firm to whom it had leased the ferry. In accordance with that resolution a contract was made with an attorney who bornd himself to perform the contemplated services. This contract was entered into on January 25, 1876.
On the nineteenth day of April following, another resolution was passed explanatory of the first, in that it was stated to be the intent of the parties that the attorney should be entitled to the compensation named whether his services were rendered in defending suits brought against the city or in prosecuting suits brought by it for the protection of its ferry rights. It also recited the fact that the attorney, on the day before its passage, had brought a suit against the adverse claimants of the ferry right to establish the right of the corporation, and declared that he had thereby become entitled to receive the annual payments as they became due. The resolution then proceeded as follows:
“Be it further resolved by the corporation of the city of Laredo, That the mayor of said city is hereby instructed and authorized to employ Edmund J. Davis, attorney at law, of Austin, Travis county, to act as attorney at law and counselor of the city in prosecuting all holders or claimants of land on the borders of the Bio Grande, within the city limits, who may resist a peaceable adjustment, and also to commence and prosecute suits to annul and cancel all sales of such lands claimed to have been made by the mayor of this city, the same not having been authorized by this corporation.
“Be it further resolved, That the said mayor is further instructed and authorized to offer said Edmund J. Davis, as his 'compensation for his services about the foregoing matters, and all other matters in which he has already been employed by this corporation, one-third of the annual rents of the ferries and ferry privileges across the Bio Grande, or of any bridge or *574 ¡bridges built across the Rio Grande by or under the authority of *this city, or of the receipts of such ferries or bridges, when not 'rented, but managed or carried on directly by the city (if such hereafter should be the case.) Such one-third of such annual rents or receipts of such ferries or bridges, to be offered to said Davis for the term of twenty years, from and including the [present year; said Davis, however, to agree on. his part to prosecute all such suits and matters at his own costs as far as pertains to his own personal expenses, and he to pay out of his »said compensation all such additional legal assistance as he may ¡find it necessary to employ towards a final adjudication and settlement of the said matters, and the final adjudication of the rights of this city to the ferry privileges across the Rio Grande.
“Be it further resolved, That the contract to be made by the mayor with said Davis, in conformity with these resolutions, shall be considered as pro tanto changing and modifying the contract made with said Davis under the resolutions passed by ¡this body on the twenty-second day of December, A. D. 1875, [relating to this subject. But it is to be understood with said 'Davis that if the corporation fails in the final adjudication of the ¡rights to the ferry privileges, then his right to receive such ^compensation of one-third is to cease, from and after the corporation shall have lost its legal right or power to collect such rents and receipts, and the corporation shall be under no further responsibility to him about this contract.”
On the same day the resolution was passed, the mayor and the attorney entered into a contract in accordance with it, of which, after incorporating the resolution as a part of it, the following is a copy:
“Row, therefore, it is hereby agreed between Refugio Benavides, mayor of said city, and said Edmund J. Davis, that said Davis accepts the offer made him by said mayor in conformity with said foregoing resolution, and hereby enters into contract and agreement, according to the terms of said resolutions, which are therefore made part hereof, and it is understood and agreed between said Davis and said mayor, that said Davis binds himself to perform the services mentioned in said'resolutions, and the said mayor, for the said corporation, binds the .same to pay and secure to said Davis the compensation stipulated in said resolutions, and said Davis and said mayor (the Flatter acting for said corporation) mutually bind themselves to do no act and enter into no engagement or contract whatever *575 that may interfere with the terms of said resolutions or put it out of the power of either respectively to perform this contract acoo'rding to the true spirit and intent thereof. And it is hereby declared that this contract is irrevocable by either said Davis or said corporation until the full compliance with and expiration of the terms thereof.
** Signed in duplicate.
“Witness our hands and seals (said Davis using scrawl for seal, and said mayor affixing the seal of said corporation), this nineteenth day of April, A. D. eighteen hundred and seventy-six,
“Edmund J. Davis, [seal.]
[SEAL OF LAREDO? “REFUGIO BENAVIDES,
“ Mayor of Laredo.”
The suit brought before the second contract was made, was prosecuted to a final judgment in favor of the city, and is the case of the City of Laredo v. Martin, reported in 52 Texas, 548.
After the second contract was made the attorney instituted another suit against the same parties as in the first, and this he prosecuted to a final judgment in favor of the city, and this is the case of the City of Laredo v. McDonnell et al., reported in 52 Texas, 511. These were all the suits instituted, prosecuted or defended by the attorney under his employment.
At the time the second contract was made, the Laredo Ferry Company was asserting title in itself to land on the margin of the Rio Grande at the place where it claimed the exclusive right to operate a ferry, which is shown to not have been of value greater than one hundred dollars, and in addition to this, other persons were claiming six or seven lots on the river, which were of the value of five dollars each. The second suit brought by the attorney employed had for its purpose the establishment of the title of the city to the land claimed by the Laredo Ferry Company. The entire sum which the attorney was to receive' under the first contract was paid; and the claim which he had under the second contract was transferred by him to the appellants, who now prosecute this action to recover the sum of eight thousand, four hundred and sixteen dollars and sixty-six cents, as their share of the proceeds arising from the ferry up to the time this action was brought.
They also ask that the court establish the validity of the contracts, and express a willingness that the court may render a *576 ¡judgment in their favor for the reasonable prospective value of ■ the right they may have acquired under the contracts. The I cause was tried without a jury and resulted in a judgment in favor of the appellants in accordance with the conclusions of ¡fact and law found by the judge, which were as follows:
1. “That the contract dated January 25, 1876, was abrogated hy the contract dated April 19, 1876, and that said second con- • traot was in excess of the power of the city council of Laredo,
and was made after the relation of attorney and client had been established between E. J. Davis and said city.
2. “That the circumstances of the case made it necessary that eminent counsel should be employed and retained to preserve intact the rights and prerogatives of said city of Laredo.
3. “That said E. J. Davis was so employed and retained by said city, and that he rendered all of the legal services requisite to establish the privileges and immunities of said city.
4. “That the city of Laredo has heretofore paid to Governor ' Davis the sum of five hundred dollars as a retaining fee, and the sum of five thousand eight hundred and twenty-one dollars and seventeen cents to his asignees, the present plaintiffs.
5. “That inasmuch as invaluable services had been rendered by Governor Davis to said city, and an adequate compensation ' should be awarded for said legal services, it is therefore deemed just, in view of all the facts and circumstances in evidence in this case, to allow for said services, in addition to the sums heretofore paid, as set forth in the fourth finding, the sum of ten thousand dollars, in full satisfaction of any and all claims now made, or which might hereafter be made, under the aforesaid two contracts.” From this judgment, both parties have appealed.
It is urged by the appellants that the court erred in holding that the second contract was invalid and in refusing to render a judgment in their favor in accordance with it, the receipts from the ferry being shown. The appellee claims'that no judgment should have been rendered in favor of the appellants, for several reasons, among which are the following:
1. That the second contract was ultra vires and against public policy in that it attempted to restrain by contract the legislative power conferred upon the municipal government.
2, That the second contract was made after the relation of client and attorney had been created by the first, in relation to *577 Substantially the same matters, and that for the second contract there was no adequate consideration.
3. That no services were rendered under the second contract Which were not required under the first.
This case was before this court at a former term, and is reported in 60 Texas, 519. The question on the former appeal was as to the sufficiency of the petition, a demurrer to it having been sustained and the cause dismissed. The petition has since been amended. It was held on the former appeal that nothing on the face of the petition necessarily required a holding that the contract was against public policy, or that the city exceeded its powers in making it; and it was intimated that no reason was shown why the city might not make a valid contract whereby the attorney might become entitled to a fixed part of the revenue to be derived from the ferry for a number of years, as compensation for his services. The case is now before us upon all its facts, and in view of them, there is grave reason to doubt whether such contracts ought to be sustained in any case.
The city held the ferry franchise as a public trust, to be administered from time to time, as in the discretion of the municipal government might be_ deemed best. If the city government deemed it to the best interest of the public to give free passage over the ferry, or to only charge such tolls as might be necessary to defray the expenses of operating the ferry, it certainly would have been its duty, and it would have had the power to do so.
The contract, if legal, would withdraw this power, for it binds-the parties mutually to enter into no engagement or contract whatever that may interfere with the terms of the resolution, or put it out of the power of either party to perform the contract according to the true spirit and intent thereof, and it is declared to be irrevocable. The parties evidently understood that the ferry, or even a bridge which might thereafter be erected, should be run for profit, and the very purpose of the last part of the contract was to make it obligatory on the city so to use it. That such was the understanding of the appellants, as to the effect of the contract, is well illustrated by their original petition in which they sought to have annulled a lease which the city had ■made; to enjoin the city and its lessees from carrying out the lease, and to have the city controlled by the court in the management and leasing of the ferry.
The theory of the appellants, as illustrated by the amended petition, is that it is obligatory upon the city, under the contract, *578 to make the most money practicable out of the ferry, either by operating it or leasing it to some other person; for the complaint is made that the city rented the ferry for the period of five years, from December 6, 1880, at an annual rental of five thousand and fifty dollars, which it is claimed was much less than its rental value, in that the receipts from the ferry were alleged to be not less than fifteen thousand dollars annually, and increasing at the rate of twenty-five per cent each year, which made its rental value at the time the amended petition was filed, not less than ten thousand dollars. All the inferences to be drawn from the petition are, that the appellants seek to recover damages based on the fact that the city had not so managed the ferry as to make the most money out of it that could be made.
Such a contract, if valid, certainly would divest the municipal government of the discretion conferred upon it—a discretion necessarily legislative in character, which such a body can not surrender by contract, or bind itself not to exercise freely whenever it may become necessary. So much of the contract seems to us clearly invalid.
If it be conceded that this part of the contract would not necessarily vitiate the other parts of the second contract, and that, between parties not sustaining the relation of client and attorney, the other parts of the contract would be valid (a question not now necessary to consider in the light of the powers conferred on the municipal government), then the question arises whether the relation of the parties at the time the second contract was made, looking to the subject matter and obligations of the parties under the first contract, was such as will deny the relief now sought. The relation of client and attorney, in reference to any litigation that might become necessary to the protection of the city in it-9 ferry franchise, was fixed by the first contract, under which the first action was brought before the second contract was made. That relation, under the first contract, was to continue for the period of five years, and the compensation for the services of the attorney, to be rendered during that time in relation to the.subject matter of that contract, was fixed by it, and this has been fully paid.
It can not be asserted that an attorney, having a contract with a client in reference to one subject matter, may not make valid contracts. with his client in reference to another, and thereby fix his compensation for services to be rendered under the latter; but, even in this class of cases, it has often been held *579 that such contracts should be closely scrutinized “because usually great confidence is reposed in the attorney, and he is in an attitude to exert a strong influence over the actions and interests of the client,” and that a compensation unreasonably large for the services rendered should not be allowed, (Newman v. Payne, 2 Vesey, 199; Jennings v. McConnell, 17 Ill., 150; Kisling v. Shaw, 33 Cal., 440; Brock v. Barnes, 40 Barb., 527; Story’s Eq., 310-313.) If this rule be applied to the case before us, and it be conceded that the attorney performed every service required by the second contract, we can not see that the compensation provided for the additional services was reasonable.
The first contract made it obligatory upon the attorney to perform every service pertaining to his profession necessary to protect the ferry franchise owned by the city, and for this his compensation was fixed. The additional services required by the second contract were, that he would “act as attorney at law and counselor of the city in prosecuting all holders or claimants of land on the borders of the Rio Grande within the city limits who may resist a peaceable adjustment, and also to commence and prosecute suits to annul and cancel all sales of such lands claimed to have been made by the mayor of this city, the same not having been authorized by this corporation.”
The property referred to in this part of the contract is shown to have consisted of six or seven lots each, not exceeding in value five dollars, and it is claimed that it embraced also a small strip of land claimed by the Laredo Ferry Company at the place where it claimed the right to operate a ferry, and this is shown to not have been of greater value than one hundred dollars.
If it be then conceded that it became the duty of the attorney to institute and prosecute suits for all this property, solely under the second contract, and that the first contract embraced or imposed no such duty in reference to any part of this land, how does the question of reasonableness of the compensation fixed by the second contract, stand? The property to be recovered did not exceed in value one hundred and fifty dollars, and what compensation did the second contract provide for the services to be rendered in reference to it? The agreement as to that was that the attorney should receive for the additional period of fifteen years one-third of the revenues derived by the city from the ferry, or any bridge thereafter to be constructed by the city.
The fair rental value of the ferry annually is estimated by the appellants at ten thousand dollars, and it is declared that this *580 will increase at the rate of twenty-five per cent per annum. If we say nothing of this probable increase, the share of the rental to which the appellants would be entitled, under the contract, in fifteen years, would be the modest sum of fifty thousand dollars, payable in annual instalments, and this for services to be rendered in the recovery of property not exceeding in value one hundred and fifty dollars. As said by one of the witnesses for the appellant: “Such a contract on the part of the city was idiotic.”
The contract, Considered in the light of the evidence, provided for compensation to the attorney .for services not required by the first contract unreasonable in amount, and such as to evidence on the part of the municipal board an utter disregard of their duty to the public, if not of willful wrong. Contracts made between an attorney and others holding trust relations to the public, in which such things appear, can not be recognized in a court of justice.
The evidence, however, further shows that the attorney, although requested to do so by resolution, never did institute any action for lands on the border of the Rio Grande which his contract required him to institute and prosecute, although no peaceable adjustment was made with the adverse claimants. It is claimed, however, that the suit against the Laredo Ferry Company et al., for the land at the place at which that company was claiming the right to operate a ferry, was for land for which the attorney was only bound under the second contract to institute and prosecute a suit. We think the; obligation to do this was imposed on the attorney by the first contract, and that the right of the city to the land might as well have been, and was as necessary to be, decided in the action brought before the1 second contract was made as in the action brought after-» wards.
The Laredo Ferry Company was claiming the right to operate a ferry by reason of three facts:
First. It claimed to be a corporation created under the general incorporation act, and that thereby it was empowered- to operate a ferry and to have the exclusive right to do so for three miles above and below the place where its ferry was situated.
Second. That it had a license from the county court of Webb county which authorized it to operated the ferry.
Third. That it was the riparian owner of a tract of land at *581 the place at which it was operating its ferry; and this land so ■claimed was the same land for which the second action prosecuted by the attorney was brought.
The Laredo Ferry Company may have been incorporated with a general power to operate a ferry, but until it acquired, in some way, land on the margin of the stream, or the right to use it, its charter power could not be legally exercised; hence, at the very foundation of its claim the question of its right to use the land arose, and had to be decided before it could be adjudicated that it had no right to operate the ferry, which it was the purpose of the suit first instituted to restrain it from doing. If it asserted claim under license from the county court, then the very basis of such a claim would be that it was the riparian owner of the land on which the ferry was established; for the county court was only authorized to give such license to owners ■of land fronting at least on one side of a water course, navigable stream, lake or bay. (Paschal’s Digest, article 3841.)
In this case, as in the other, the determination of the question of title to the 'land was necessary. Upon this question in the case of City of Laredo v. Martin, which, as before said, is the case first instituted against The Laredo Ferry Company and ■others, after stating the grounds of the appellees’ claim, it was-said “in the case of the city of Laredo against C. M. McDonnell and the Laredo Ferry Company, just decided, it has been held by the court that the mayor had no authority to sell the land claimed by appellees, which is the foundation of their claim to the ferry privilege for which the license was granted them by the county court—that said deed should be canceled and annulled, and, in effect, that the land in question belonged to and was the property of the City of Laredo, the appellant in this case. It is a necessary consequence of this decision that the judgment of the court below, that appellees were entitled to maintain the ferry, is erroneous, and must be reversed.” (52 Texas, 559.)
,The protection which the city of Laredo sought to obtain through the suit or suits the attorney contracted to prosecute, was to be rid of an opposition ferry, and this certainly never could be attained without litigation in which the foundation of the adverse claim might and should be adjudicated.
The contract first made bound the attorney to prosecute a suit in which this should be done, i. e., to prosecute a suit in which it should be adjudicated, whether the city or the ferry company *582 owned the land at which the latter operated the ferry. The decision of that question was decisive of the ferry right.
Opinion delivered June 25, 1887.
The rule which denies to an attorney the right to make an agreement with his client after an employment in a particular business, by which the contract is so raised as to secure greater compensation to the former than was first agreed upon, is wholesome, and has its foundation in principles adopted to secure clients against imposition. It tends to preserve the purity of the bar and to accomplish the ends of justice, and it ought not to be departed from unless in some case peculiar in its facts. This case presents no facts which can take it without the rule.
There is no conflict in the evidence bearing on the question we have considered; and the evidence tending to show what would be a reasonable compensation for the services rendered, it seems to us, preponderates in favor of the proposition that the sum of five thousand seven hundred and eighty-one dollars and seventeen cents, paid, was a reasonable compensation for all the services rendered.
The assignments of error, which relate to the admission of evidence, have been examined, and we are of the opinion that there was no error committed in receiving the evidence.
If any of the evidence of the witness Santos Benevides was excluded, there is no bill of exceptions showing that this was done, or the grounds of objection; but we deem it proper to say that there was nothing in his entire testimony, as we find it in the record, which could have changed the result of the case.
The other assignments of error have been disposed of in what we have said on the main questions in the case.
The appellants and their assignor, having received all they were entitled to, the court erred in rendering a judgment in their favor for any sum, and for this reason its judgment will be reversed and judgment will be here rendered in favor of the appellees.
Reversed and rendered.