## CITY OF LAREDO v. INTERNATIONAL BRIDGE & TRAMWAY CO.

(Circuit Court of Appeals, Fifth Circuit.   January 15, 1895.)

No. 250.

1. MONOPOLIES—FERRY FRANCHISE AND BRIDGE PRIVILEGES.

The city of Laredo, Tex., owning a ferry franchise over the Rio Grande river, granted to it at an early day by the Spanish government, contracted, by ordinance, with a bridge company to permit the erection of the north end of a bridge in certain of its streets, and agreed not to exercise its ferry franchise for a period of 25 years, in return for which it was to receive $5,000 per year for the same period.   *Held*, that this ordinance did not create a monopoly, within the meaning of the Texas constitution (article 1, § 26), which declares that "perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed."

2. MUNICIPAL CORPORATIONS — POWER OF COUNCIL — ALIENATION OF FERRY FRANCHISE.

In thus converting its ferry privilege into an equivalent or more beneficial bridge privilege, for a, limited period, the city was not exercising a discretion so clearly beyond the purposes of the franchise as to make the contract void, and the ordinance was within the lawful power of the council to enact.

In Error to the Circuit Court of the United States for the Western District of Texas.

This was an action by the city of Laredo, Tex., against the International Bridge & Tramway Company, to recover money alleged to be due under a contract.   The circuit court sustained a demurrer to the petition, and, plaintiff having declined to amend, rendered judgment dismissing the action.   Plaintiff brings error.

William Aubrey, for plaintiff in error.

J. H. McLeary, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

McCORMICK, Circuit Judge.   The plaintiff in error, the city of Laredo, Tex., brought its action in the state court for Webb county, Tex., against the defendant in error, the International Bridge & Tramway Company, a private corporation, incorporated under the laws of the state of Texas.   The plaintiff alleged:

That it is the owner of a large tract of land, embracing the city of Laredo, which was granted to it by the crown of Spain in A. D. 1767.   That in the same grant was embraced the exclusive right and privilege in and to the plaintiff to establish and maintain a ferry privilege across the Rio Grande, which stream bounds the grant and the city of Laredo on the south.   That the grant from the Spanish crown was in all respects confirmed by the legislature of the state of Texas on the 4th of September, A. D. 1850, and for which that state issued its patent to plaintiff in July, 1884.   That by an act of the legislature dated 29th January, 1848, incorporating the city of Laredo, the plaintiff's authority and privilege to establish ferries across and landings on the Rio Grande, and to fix the rates and rents of the same, was recognized, and was again recognized in an amendment to. its charter granted by the legislature in February, A. D. 1850.   That plaintiff had exercised the exclusive right of its ferry franchise from the date of its grant continuously up to the 7th April, 1889.   That on the 1st September, 1887, the de-

fendant made application to plaintiff, through its council, by which it asked authority to erect and construct within the corporate limits of the city of Laredo, in such street as should thereafter be mutually determined, the north end of a bridge which it desired to construct across the Rio Grande, and proposed to pay the sum of $3,000 annually for the first five years from the date of the opening of the bridge for travel, and to pay annually for the second five years $5,000, and from the expiration of ten years to pay annually $6,000 for the privilege it asked. That, at and for a number of years prior to the time of the negotiations set in motion by this application, the plaintiff was receiving and had received annually for its ferry franchise the sum of $5,000, which was paid quarterly by the lessees thereof. That the negotiations between the plaintiff and the defendant resulted in the passage of an ordinance by the plaintiff's council authorizing the defendant to enter upon, with the north end of its bridge, certain streets and lands of the plaintiff, to use the same in constructing, opening, and maintaining its bridge, and agreeing that for the period of 25 years the plaintiff would not exercise its ferry privilege, nor permit others to do so, and would by proper ordinance enforce the collection of reasonable tolls, requiring bond of the defendant for the proper discharge of its duties in the premises, and allowing 18 months for the completion and opening of the bridge, the dimensions and quality of which were specified. The terms of this ordinance were duly accepted by the defendant, and bond given as required. That, pending the period of 18 months allowed for opening the bridge, the plaintiff withdrew the lease of its ferry franchise, and has not exercised the same, or permitted it to be exercised by any person or corporation other than the defendant, since the opening of the defendant's bridge for business, which was 7th April, 1889. That, in consideration of the acts and engagements of the plaintiff above substantially stated, the defendant, besides other covenants not in issue, contracted to pay the plaintiff the sum of $5,000 a year for the period of 25 years from 7th April, 1889, in quarterly installments. That these quarterly installments, as each matured, were regularly paid from 7th April, 1889, to the quarter ending 8th January, 1892, except the sum of $650. That since the time last mentioned the defendant has failed and refused to pay the installments that have matured to the amount, at the filing of the suit, of the sum stated. That the plaintiff has fully kept and performed its engagements, and the defendant has enjoyed the use and fruits of the rights, privilege, and aid granted it by the plaintiff.

The prayer is for judgment for the amount of the installments matured and unpaid, and for interest thereon, and for costs, and for such other general relief as the court may deem just.

The defendant demurred to the plaintiff's petition, urging: (1) It shows no cause of action; (2) the contract sued on was made in pursuance of an attempt to regulate foreign commerce; (3) the contract sued on created a monopoly; (4) it appears from the petition that the city had no authority to enact the ordinance under which the recovery is sought; (5) the city undertook by the ordinance to barter away its ferry privilege without authority of law.

At the hearing the circuit court, to which the case had been removed, sustained the demurrer on the first, third, fourth, and fifth of the grounds just stated, and, the plaintiff declining to amend, judgment was passed dismissing the action.

The constitution of Texas declares: "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed." Const. 1876, art. 1, § 26. In the whole period of that historic struggle, in the forum and on the field, which marked the birth, growth, and full maturity of the genius of English free government, the denunciation against monopolies was never leveled at any claim of right to exclusive privilege held under an act of parlia-

ment. In the Slaughterhouse Cases, 16 Wall. 36, it was said by Mr. Justice Miller in delivering the opinion of the court:

"We think it may be safely affirmed that the parliament of Great Britain, representing the people in their legislative functions, and the legislative bodies of this country, have from time immemorial to the present day continued to grant to persons and to corporations exclusive privileges,—privileges denied to other citizens, privileges which come within any just definition of the word 'monopoly' as much as those now under consideration,—and that the power to do this has never been questioned. Nor can it be truthfully denied that some of the most useful and beneficial enterprises set on foot for the general good have been made successful by means of these exclusive rights, and could only have been conducted to success in that way."

There are classes of exclusive privileges which certainly do not amount to "monopolies," within the meaning of the common law or of the Texas constitution. Courts of last resort have generally refrained from propounding an authoritative affirmative definition of the "monopoly" so odious to the common law and to the genius of a free government. It would try the power of expression of most judges, if not of human speech, to frame such a definition, outside of which a grant or contract must wholly and clearly rest to escape the stroke of nullity. It has therefore generally been deemed wise and safe to use rather the process of exclusion, and determine what is not a monopoly, so far as the case in hand required. From the time of the separation of Texas from Mexico the provision above quoted has had place in her constitution. From its first adoption, now nearly 60 years ago, it has been the constant practice to grant exclusive ferry privileges to individuals and to corporations. These grants have been made sometimes directly by the legislature, but commonly by the subordinate municipal bodies. It has also been the practice in that state to grant to individuals and to corporations authority to erect and maintain toll bridges over the larger streams. At one time a general law authorized the securing of such a privilege to be exclusive for a period of not exceeding 10 years, on the terms and in the manner prescribed in that statute. Special charters have been passed granting such privileges to individuals and corporations for longer periods than 10 years; and the power of the legislature to make such grants has been held to be undoubted by the supreme court of Texas. Hudson v. Emigration Co., 47 Tex. 56. It may be safely affirmed that many of these enterprises thus authorized and fostered have been as useful and beneficial to the public, as promotive of the general good, as they have proved profitable to the holders of the privilege; that they have been made successful by means of the enjoyment of the exclusive right; and that, at the time and place when and where these bridges were erected, they could have been constructed, maintained, and conducted to success only in that way. It is not suggested that the defendant's bridge is not promotive of the general good, or useful and beneficial to the inhabitants of the city of Laredo, or that it is not as useful and beneficial as the ferry which the city had maintained for more than a century under its grants from the Spanish crown and from the state of Texas. It is not shown by the plaintiff's pleading, nor

can it be fairly inferred therefrom, that the ferry privilege so early granted, so often recognized by the legislature, and so long enjoyed, was held by the city of Laredo for strictly municipal purposes, rather than bestowed as a source of revenue, to be administered as such for the best interest of the city, in the sound discretion of its constituted authorities, acting in good faith.   On the contrary, if the petition does not expressly so aver, it is fairly and clearly to be implied from its allegations that the privilege was originally extended as an endowment for the purpose of providing revenue for the infant town, to be reared in a remote province existing in the state of nature, inhabited chiefly by savage Indians.   It is only in its quality as property that the contract declared on deals with this ferry privilege.   The defendant had organized as a corporation under the state laws for the purpose of erecting a bridge across the stream. It had procured the consent and authority of congress to erect and maintain its bridge.   It represented that it had procured the proper concession from the authorities on the Mexican side of the river. But it could not enter the city of Laredo, or erect any part of its bridge on the streets or grounds of the city, without its consent, either voluntarily given, or secured by the process of expropriation, if the defendant had that power.   If it was authorized to put in operation the police power of expropriation, it must do it, if at all, in the manner and on the terms prescribed by law.   The opening of a sufficient bridge at that point, or from any point in the city, across the stream to the Mexican city on the other shore, would injure or destroy the value of the ferry privilege, then yielding the city an annual revenue of $5,000, payable and being regularly paid quarterly into its treasury.   The abutments and approaches to the bridge would necessarily, to some extent, obstruct the street on which it entered, and the streets crossing it at or near the river front.   It was or might become necessary or desirable to use other ground belonging to the city not in use as a public street.   All of these matters would be considered in the expropriation proceeding, or, at least, would certainly be insisted on by the city.   In full view of all the conditions of the respective parties, with perfect actual knowledge of all the facts, and charged with equal knowledge of the constitution and general laws of Texas, the defendant chose to negotiate for, and proposed to contract for, the voluntary grant of the right and privilege it needed or desired from the city.   It can hardly be seriously contended that the petition does not show that the city had some interest and rights in the subject-matter of this contract about which the city council had power to contract in some manner or to some extent.   Laredo v. Martin, 52 Tex. 548; Indianola v. Gulf, W. T. & P. R. Co., 56 Tex. 594; Waterbury v. Laredo, 60 Tex. 519.   Not only has it power to make some provision for the proper disposition and use of these valuable interests of the city, but an exigency has arisen when it is imperatively called to decide whether it will make a voluntary contract disposing of these interests, so as to save the city the present value and secure full compensating equivalents, or submit to proceedings for expropriation that would substantially devour these

rights on such terms as another tribunal might impose. The council decided to contract as in the ordinance specified and sufficiently set out in the opening of this opinion. So far as the defendant, in the erection and operation of the bridge, may or should be subject to municipal regulation and control by the city, county, or state, as respects the due regard for safety, the sufficiency of the service, and the reasonableness of tolls, it is not affected by this contract. The defendant did not ask the city council to grant it a franchise to erect and maintain a toll bridge across the Rio Grande. It represented that it already had and held from the Mexican authority, and from the congress of the United States, the exclusive right to construct, maintain, and operate such a bridge, and to collect tolls, the government of the United States reserving the right to regulate the tolls. The plain, practical construction put on the constitution of Texas by every department of her state government clearly shows that the exclusive privilege held and exercised by the defendant does not constitute a monopoly, within the meaning of section 26, art. 1, of that instrument. The allegation is ample that the defendant is exercising all the rights and enjoying all the exclusive privileges that the contract sued on contemplated. It therefore follows that the contract is not one creating a monopoly forbidden by the constitution of Texas. The defendant preferred to incur an annual charge running from the opening of its bridge, then 18 months in the future, and to promise to pay from that future date quarterly installments of a specified amount for a period approximating the ordinary lifetime of the bridge structure it was to erect, rather than pay in advance a lump sum in full of the consideration it received. We do not have to seek far or to look sharp to find good reason for this choice. The sense of justice rejects the thought that any lawful being, though without a soul, could have made this choice with a view to the defense here urged. Considering the grant of the ferry franchise as an endowment for the purpose of producing revenues, and conceding that this franchise, though not alluded to in the defendant's proposition, was a material, if not the chief, subject of the contract between the parties, the administration and disposition of it by the ordinance which embodies their contract does not appear to have been or to be reckless or improvident. The discretion to convert the ferry privilege into an equivalent or more beneficial bridge privilege, without loss of revenue to the city, does not appear to us to be a dangerous discretion, so clearly beyond the purposes of the franchise as to make the agreement to do so void. In the nature of the case, such a disposition, if made at all, must extend over a period approximating the ordinary lifetime of the bridge structure. The stream is a large one,—as its name imports, it is a navigable water, the dividing line between two great nations, under whose authority the bridge was to be built and operated. The defendant relies on City of Brenham v. Water Co., 67 Tex. 542, 4 S. W. 143; Waterbury v. City of Laredo, 68 Tex. 575, 5 S. W. 81; and Central Transp. Co. v. Pullman's Palace Car Co., 139 U. S. 24, 11 Sup. Ct. 478. We have carefully examined all of the Texas cases cited on the briefs

of the counsel for each of the parties. The doctrines announced by Mr. Justice Gray in the case last referred to, and the doctrine of the various previous cases in that court, reviewed by him and so clearly summarized in that opinion, have become familiar law. But neither in those opinions of the supreme court, nor in the authority of the Texas cases, as we read them, do we find support for the contention of the defendant in error. The Texas cases, taken all together, it seems to us, oppose, rather than sustain, the defendant's contention. The opinions of the supreme court, so far as they apply, have the same effect. It seems clear to us that the contract in question is within the powers of the council to contract. We conclude, therefore, that the demurrer should have been overruled. Ordered that the judgment of the circuit court is reversed, and the cause remanded to that court, with direction to award the plaintiff a new trial