**CITY OF BIG SPRING, Appellant,**

**v.**

**BOARD OF CONTROL of the State of Texas et al., Appellees.**

**No. 11314.**

Court of Civil Appeals of Texas.

Austin.

April 7, 1965.

Rehearing Denied April 28, 1965.

John A. Burgess, Big Springs, J. C. Hinsley, Austin, for appellant.

Waggoner Carr, Atty. Gen., Hawthorne Phillips, First Asst. Atty. Gen., Stanton Stone, Executive Asst. Atty. Gen., J. C.

Davis, John Reeves, Pat Bailey, Asst. Attys. Gen., Austin, for appellees.

HUGHES, Justice.

The City of Big Spring, a Home Rule City and the County seat of Howard County, sued the State Board of Control of Texas, The Board for Texas State Hospitals and Special Schools and the Attorney General of Texas for a declaratory judgment declaring that a Contract between the City and the Board of Control, executed in 1937, under which the City agreed to furnish not to exceed 300,000 gallons of water per day to the Big Spring State Hospital at a rate of ten cents per 1,000 gallons was not binding on the City and was subject to renegotiation.[1]

Trial to the court resulted in a judgment declaring the subject Contract valid and denying any relief to the City.

The material portions of the City-Board of Control Contract are:

"THIS AGREEMENT made and entered into by and between the City of Big Spring, Texas, hereinafter called THE CITY, and the Board of Control of the State of Texas, acting for and on behalf of the State of Texas,

"WITNESSETH

"WHEREAS, the Board of Control of the State of Texas has selected as site for, and proposes to construct and maintain thereon, a new State Hospital, said site consisting of parts of Sections Numbers Twenty-five (25), Howard County, Texas; and, whereas, the City of Big Spring has heretofore agreed with the Board of Control of the State of Texas that it will, in part consideration for the location of said hospital at said site above mentioned, furnish water to said hospital and for the uses and purposes of said hospital at a rate agreed upon and as hereinafter stated, and the City has also deeded to the State of Texas for use in connection with said hospital five acres of land with producing water wells thereon, to be used in accordance with agreement between the City and the Board of Control, and it is desired to clearly and expressly state the agreement between the parties hereto with respect to same:

"NOW, THEREFORE, it is agreed by and between the City and the Board of Control of the State of Texas, as follows:

"I.

"This agreement is made by the Board of Control of the State of Texas for the use of the State of Texas, in connection with the construction, maintenance and operation of a State Hospital on the site above referred to, and the rights and privileges conferred by this contract upon the Board of Control of the State of Texas are with reference to and pertaining to said hospital, and where any action is required under this contract on behalf of said hospital, it shall be understood that such action may be taken and said hospital and the State of Texas represented by such person or persons as may be lawfully in charge of said hospital and having the right to contract and bind the State of Texas with reference to any such matters as may be involved at any time under this contract. The Board of Control and the State of Texas shall hereafter be included within the designation of hospital under the remaining terms and provisions of this agreement.

"II.

"The City covenants and agrees to furnish to the State of Texas, and to

1. This suit was authorized by the Legislature. Acts 1962, 57th Leg. 3rd Called Sess., p. 233.

said hospital above mentioned, such water as said hospital may require for any and all uses incident to said hospital and its operation and maintenance to an amount not exceeding three hundred thousand gallons per day, at a price of ten cents (10¢) per thousand (1000) gallons, said hospital to be furnished water delivered through one meter furnished by the hospital at such location on said hospital site as may be selected by the Board of Control, and the distribution of said water from said central point to be made by said hospital at its own cost and expense and the duties and obligations of the City to be discharged upon delivery of said water through said meter at said selected location. The water furnished as aforesaid to be paid for monthly in accordance with actual water consumed as shown by meter readings.

"III.

"The City has by separate instrument conveyed to the State of Texas a tract of five acres of land, with three producing water wells located thereon; the City covenants and agrees that in event the Board of Control shall equip said wells for pumping and pump water from said wells and deliver same into the pipe lines of the City of Big Spring with which said wells are connected, all such equipment and pumping of said wells to be taken care of by said hospital, that said water may be metered into the City transmission lines connected with the wells, and metered out again at the hospital free of cost to said hospital on account of the carriage of said water from said wells to said hospital, the hospital furnishing the meters, and the City agreeing to deliver to said hospital without cost or charge the same amount of water that is metered into the line from wells pumped by said hospital. Said hospital shall have the right to buy any part of its water supply, or all of same,

from the City under the terms and conditions as set out in the preceding paragraph, or at its election it may purchase a portion of its water from the City and pump and produce part of its own water from the wells on said five acres tract under the terms and conditions as just above set out, it being entirely optional with said hospital as to which of said methods of providing water it cares to utilize, or at its election may utilize and operate under both plans, buying part of the water from the City and pumping part of the water itself.

"IV.

"It is understood and agreed that this agreement is made in accordance with and pursuant to an agreement heretofore made by and between the City of Big Spring and the Board of Control of the State of Texas with reference to the location of said hospital site near the City of Big Spring, and this contract with reference to furnishing of water to said hospital is and constitutes a material consideration influencing the Board of Control to locate said hospital at said site, and this agreement with reference to the furnishing of water by the City to said hospital shall continue in full force and effect and is not subject to being revoked as long as the State of Texas shall in good faith maintain and operate said hospital on said site."

The following facts are undisputed:

The State of Texas commenced operation of the Big Spring State Hospital in 1938 and has continued to maintain and operate such Hospital since such time.

The City of Big Spring has furnished water, within the Contract limit, to the Hospital since 1938 at the rate of ten cents per 1,000 gallons, and is continuing to do so.

Most of the water processed and distributed by the City is purchased as raw water from the Colorado River Municipal Water District. The average cost of this water to the City for the years 1953–64 has been 16.5 cents per 1,000 gallons.

During the years 1960–1964, the average cost of treatment and distribution of water by the City has been 17.25 cents per 1,000 gallons.

During the years 1960–1964, the cost to the City of water purchased, treated and delivered to the Hospital under the above Contract has been 33.75 cents per 1,000 gallons.

The cost to the State of the Hospital since its inception has been about $18,000,000.00.

The current payroll of the Hospital is $91,000.00 per month.

In 1961, the Legislature adopted a resolution authorizing the Board for Texas State Hospitals and Special Schools to "enter into negotiations with the City of Big Spring for a new Contract which will cover the increased demands of the Hospital for water, the cost of delivering same, and the maintenance of adequate water pressure at the Hospital for ordinary water use and for fire protection."[2]

Following the enactment of this resolution, the Executive Director for the Hospitals and Special Schools Board, Mr. Raymond Vowell, requested an opinion of the Attorney General as to whether or not the Board "is presently empowered to renegotiate the Water Contract with the City of Big Spring."

The response from the Attorney General concluded with this statement, "Under the facts presented, it does not appear that the parties contemplate an assumption by the City of any obligation beyond that which it is presently bound to perform. In the event the parties reach an agreement affording a new and adequate consideration to the State, they then may renegotiate the contract."

The City has three points, jointly briefed, which deny the authority of the parties to the 1937 contract, the City and the Board of Control, to make such Contract.

We will first discuss the authority of the City.

The City, as a Home Rule City, has authority to own and operate a water works system and to prescribe rates for water furnished. Art. 1175(11), Vernon's Ann. Tex.Civ.St.

Citing City of El Paso v. Carroll, 108 S.W.2d 251, writ ref. and San Antonio Ind. Sch. Dist. v. Board of Trustees, 204 S.W.2d 22, writ ref., n. r. e., both by the El Paso C.C.A., as authority for the rule that a City may not make a donation or gift of its assets, the City contends that this is the effect of the Contract between it and the Board of Control.

■ Without determining the authority of a Home Rule City to make gifts of water to a State hospital, we hold that this Contract is not either in form or substance a gift.

■ There is no evidence that ten cents per thousand gallons of water in 1938 in Big Spring was not a fair price. In the absence of such evidence, we must assume that it was a fair price.

Even if the contract price for the water was below its market value when the Contract was made, there were other benefits which the City expected to receive and did receive as contractual consideration for the Contract. The construction and maintenance of an $18,000,000.00 Hospital (and expenses) and its $91,000.00 monthly payroll constitute the real consideration which the City received and is continuing to receive under the Contract. The value of

2. Acts 1961, 57th Leg., Reg.Sess., p. 1249.

this institution to a town the size of Big Spring in 1938, or now, is certainly not trivial.

The City cites numerous authorities, some of which are listed below,[3] to the effect that in the regulation of water and other utilities rates a City is exercising a legislative or governmental function and that it cannot divest itself of this continuing power by contract.

It is our opinion that the City of Big Spring was vested with authority to enter into a Contract with the Board of Control to furnish water to the Big Spring Hospital for the consideration stated in the Contract and that in exercising this authority it has not impaired its governmental or legislative authority.

Art. 1108, V.T.C.S.[4] provides, in part:

"Any town or city in this State which has or may be chartered or organized under the general laws of Texas, or by special Act or charter, and which owns or operates waterworks, sewers, gas or electric lights, shall have the power and right: * * *

"3. To extend the lines of such systems outside of the limits of such towns or cities and to sell water, sewer, gas, and electric light and power privileges or service to any person or corporation outside of the limits of such towns or cities, or permit them to connect therewith under contract with such town or city under such terms and conditions as may appear to be for the best interest of such town or city; * * *."

In Wiggins, footnote 4, it was held that an ordinance by the City of Texarkana, a Home Rule City, charging for water delivered by it outside the corporate limits one and one-half times the rate charged for water furnished within the corporate limits was invalid because discriminatory and that Sec. 3 of Art. 1108, supra, did not authorize a City to charge discriminatory rates. There is a strong four judge dissent in this case the effect of which is that the majority opinion flouts the clear unambiguous language of the statute. The importance of the case here, however, is that it sustains the applicability of Sec. 3, Art. 1108, to Home Rule Cities, and it also sustains its validity.

There is no discrimination in this case, and none is asserted.

A City owning or operating a waterworks is under no duty to furnish water to persons residing beyond the corporate limits. City of Livingston v. Wilson, 310 S.W.2d 569, Beaumont C.C.A., writ ref., n. r. e. It may do so, however, upon such terms "as may appear to be for the best interest of such town or city" (Sec. 3, Art. 1108) so long as it does not discriminate in so doing. (Wiggins)

If the City of Big Spring lost any legislative prerogatives in executing the Contract in suit it did so of its own volition and under authority of a valid statute.

The City also attacks the Contract on the ground that it is for an indefinite period

---

3. Barr v. City Council of Augusta, 206 Ga. 753, 58 S.E.2d 823, Connett v. City of Jerseyville, 110 F.2d 1015, 7th Cir., Schenker v. City of San Antonio, 369 S.W.2d 626, San Antonio C.C.A., writ ref., n. r. e., Williams v. Davidson, 43 Tex. 1, Waterbury v. City of Laredo, 68 Tex. 565, 5 S.W. 81, Bowers v. City of Taylor, 16 S.W.2d 520, Tex. Comm. of Appeals, Nairn v. Bean, 121 Tex. 355, 48 S.W.2d 584 and City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S.W. 143.

4. This statute is applicable to Home Rule Cities. City of Sweetwater v. Hamner, 259 S.W. 191, Fort Worth C.C.A., writ dismissed. See also City of Texarkana v. Wiggins, 151 Tex. 100, 246 S.W.2d 622. The Special Charter of the City of Big Spring provides, in part: "The City shall have all powers that are now, or hereafter may be granted to municipalities of its class by the Constitutions or laws of the State of Texas."

and is, therefore, a Contract terminable at the will of either party thereto. In support of this contention, the City cites Sturgeon v. City of Paris, 58 Tex.Civ.App. 102, 122 S.W. 967, Texarkana C.C.A., writ denied, and other authorities. In Sturgeon the Contract relied upon was to the effect that the city would furnish water to him so long as he desired to use the water and paid for it. The Court, among other controlling holdings, held that this Contract was a Contract at will and terminable by either party at any time.

■ The Contract in suit is not indefinite as to the period of its duration. It is limited in time by a specified event, towit, "as long as the State of Texas shall in good faith maintain and operate said hospital on said site."

■ In 17 Am.Jur.2d, Contracts, Sec. 80, p. 420, it is stated that "Words which fix an ascertainable fact or event, by which the term of a Contract's duration can be determined, make the Contract definite and certain in that particular." The contingency upon which the duration of this Contract depends can be ascertained with precision. The duration of the Contract is, therefore, not indefinite.

Turning now to the authority of the Board of Control to make the Contract in suit, appellant directs our attention to these facts:

The Big Spring State Hospital was constructed and established under the provisions of Art. 3185a, V.T.C.S. This article provided for the general location of the hospital and contained these provisions:

"The Board of Control of the State of Texas shall select a site for said hospital, and the Board, in selecting such site, shall make such selection with a view to its accessibility and convenience to the greatest number of inhabitants, the supply of water, building material, fuel, fertility of soil, and healthfulness, and the same shall contain not less than three hundred (300) acres of land as above described.

\* \* \* \* \* \*

"At the completion of the buildings, and when the said hospital is ready to open, the Board of Control shall appoint a Superintendent and other employees to superintend and carry on the work of such hospital as is now provided by the General Laws of the State of Texas governing such institutions.

"The support and general maintenance of said hospital shall be the same in every respect as is provided for insane hospitals as now provided by law.

"There shall be constructed upon said grounds so selected permanent, suitable, substantial, and fireproof buildings sufficient to accommodate at least five hundred and forty (540) inmates; said buildings to be provided with modern improvements for furnishing water, heat, ventilation, and sewerage; and the Board of Control immediately after this Act goes into effect and after the selection of the site for said hospital, and after the title of said land shall have been approved by the Attorney General, shall advertise for plans and specifications for said buildings and contract for the erection of the same; and shall have the power and authority to do and perform all things necessary for carrying out the purpose of this Act. \* \* \*

"That there shall be and there is hereby appropriated out of the General Revenues of this State not otherwise appropriated the sum of Eight Hundred and Seventeen Thousand Dollars ($817,000) for the buildings and improvements and the expenses incurred in securing the lands for the site, providing that no money herein appropriated shall be expended for the payment of the lands selected for the site."

Article 634, R.C.S., 1925, in force in 1937, provided, in part, that the Board of Control

should purchase all supplies for each eleemosynary institution, and, similarly, Art. 642, id., provided that the Board should contract for all supplies, except perishables, needed for the maintenance and operation of such institutions. Art. 643, id., provided for public notices before letting such Contracts and that, "Such contracts shall be made within the limits of the appropriations made by the Legislature for such purposes regard being had to the appropriations for each institution."

On October 22, 1937, when the Contract before us was executed, there was no appropriation in existence for the maintenance of the Big Spring Hospital.

From these facts, appellant concludes that the Board of Control lacked authority to execute the Contract.

Since 1937, the Legislature has appropriated funds for the support and maintenance of the Big Spring Hospital from which appropriations the City has been paid for water used under the terms of the Contract.

■ It is our opinion that the Board of Control was not without authority to execute the Contract. The Hospital could not operate without water. The site selected for the Hospital was not within the city limits of Big Spring and that City was under no legal obligation to supply the Hospital with water. The only manner in which the Hospital could be assured of an adequate supply of water was to develop such a supply itself or to contract with someone who owned or controlled a sufficient source of water. The latter method was adopted here. The authority for the Board to contract for water before there was actual need for it is clearly implied by the language of Art. 3185a, supra. By this statute the Board of Control is given power and authority to do and perform all necessary things for carrying out the purpose of the Act. The overall purpose of the Act was to build, establish and maintain a Hospital for the treatment of mentally ill persons. One of the specific instructions to the Board was to select a site

for the Hospital having in view the "accessibility" of a "supply of water." For water to be accessible to the Hospital, in the sense that word is used in the statute, it must be *obtainable*. It could only be obtainable here, or at least one way in which it could be made obtainable, was by Contract with the City of Big Spring which had a supply of water it was willing to sell to the Hospital as evidenced by its Contract. Of necessity, this Contract had to be executed before the Hospital was constructed if it was to be relied upon to insure ample water for the Hospital. If it had not been so executed the Board of Control would have violated the specific statutory instructions given it, which instructions in our opinion, controlled other general statutes governing the Board.

■ It is also our opinion that this Contract does not run afoul of any Constitutional provision brought to our attention in a general fashion. Appellant relies upon Fort Worth Cavalry Club, Inc. v. Sheppard, 125 Tex. 339, 83 S.W.2d 660, as requiring us to hold the Contract invalid for want of an appropriation for the purchase of water when it was made.

Art. 8, Sec. 6 of the Texas Constitution, Vernon's Ann.St., provides, that no money shall be drawn from the Treasury but in pursuance of specific appropriations made by law and that no appropriation of money should be made for a longer term than two years.

Art. 3, Sec. 44 of the Texas Constitution provides, in part, that the Legislature shall not grant by appropriation, or otherwise, any money out of the State Treasury " * * * when the same shall not have been provided for by pre-existing law * * *."

Art. 3, Sec. 49 of the Texas Constitution provides that, with certain exceptions, no debt shall be created by or on behalf of the State.

The primary holding in Cavalry Club was that the Adjutant General who executed a five year lease on behalf of the State had no authority to do so.

It is our opinion that this case is controlled by the decision in Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S.W. 722. This case, Marrs, was distinguished in Cavalry Club, the Court saying, "In the Marrs Case, the Supreme Court had under consideration a five-year contract, but the contract was one expressly authorized by statute. No such case is presented here."

In Marrs the Court held valid a contract between the Texas State Textbook Commission and Scribner's Sons, a Corporation, by the terms of which the State agreed to use certain textbooks in its schools and Scribner's Sons obligated itself to furnish and sell such books to the State. The contract was for five years. In its opinion, the Court said:

"The Constitution is silent as to the length of term for which a contract may be made by the state. The only provisions of the Constitution that might affect the term are those which provide that no debt may be created by or on behalf of the state, and that no appropriation of money may be made for a longer term than two years, and perhaps the provision prohibiting monopolies. The contract under consideration does not partake of the nature of a monopoly.

"The state in its sovereignty has the right and power to contract. Unless limited by organic law, the subjects of contract, the length of term for which a contract may be made, and the general public policy regarding contracts, are within the legislative prerogative.

"The contract under consideration is one which the state text-book commission had legislative authority to make. The statute expressly authorizes the making of a contract for a period of time not to exceed six years.

"The making of this contract by the state text-book commission was not the exercise of any legislative function or power on its part, but the perform-ance of the ordinary business affairs of that body. Therefore the contract is not one which, in effect, precludes it from exercising from time to time any power legislative in character conferred upon it by law, if indeed it has any such powers; and its act in making the contract is not controlled by the limitation that the power to make contracts which affect governmental or legislative functions must be so exercised as not to infringe upon the powers of its successors. This is stated that the law of this contract may not be confused with such other contracts as were under consideration in the case of City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S.W. 143, and cases which follow it. In that case, in reviewing the contractual powers of cities, Judge Stayton said:

" 'We do not wish to be understood to hold that a municipal corporation has no power, in any event, to contract for such things as are consumed in their daily use for a period longer than the official term of the officers who make the contract; but we do intend to be understood to hold that such corporations have no power to make contracts, continuous in character, in reference to such things or any others by which they will be, in effect, precluded from exercising from time to time any power, legislative in character, conferred upon them by law.'

"That case is based upon the idea that under the terms of that contract the city had divested itself of the exercise of governmental and legislative functions, and for that reason it was objectionable, and that the contract created a monopoly.

"Obligations that run current with revenues are not debts within the contemplation of the Constitution. * * *

"This contract obligates the state to introduce into and use relator's books in the public free schools for a period of five years. It obligates relator to fur-

nish, offer, and sell these books to the state each year for five years, upon the requisition of the school authorities each year for such books as may be needed. Payment for them is to be made out of the current fund each year as they are purchased. The obligation of the contract is not to buy a fixed number or amount of books, but only so many as are needed by the schools of the state. Liability is fixed only for such amounts as are requisitioned by the trustees of the schools. The number of books purchased for any year and the amount of money applied thereto is wholly within the control of the school authorities.

"The contract is for uniform text-books for a period of five years. No quantity is stipulated and no promise to pay, only an agreement to use the books in the schools. The statute and the contract provide that no debt is created. The obligation to pay arises only upon the purchase and delivery of books for the year when needed, and according to the purchase. The books so furnished and so purchased during any year do not make a charge on the future resources of the state, but are paid for each year as the purchases are made.

"It logically follows that the contract is not repugnant to that part of section 6, Art. 8, of the Constitution which provides: 'Nor shall any appropriation of money be made for a longer term than two years.'

"If any particular school district had no need of any new books of the kind provided for in this contract, its trustees would make no requisition for any; or if all the districts of the state should be supplied, none would be furnished, and the matter of making appropriation would not arise.

"One year of the contract has already expired. No purchases have been made under it, and consequently no payment made, and no question of appropriation has arisen. No debt has been created, and no demand made based upon it.

"No action could be maintained on the contract against the state, even if permission to sue were given, for the recovery of compensation under the contract, without evidence that books had been furnished. This proves that there is no debt created until books have been supplied in accordance with the terms of the contract; and, also, that no appropriation was necessary 'for a longer term than two years.'

"The power to contract is an important subject. While making limitations on other subjects of equal importance, the Constitution made none on the power to contract, except as to the creation of 'debt.' It would seem, if other limitation on the power to contract was intended, it would have been expressed.

"The fact that the official term of office is commonly two years, together with the limitation that appropriation shall not be made for a longer term than two years, is argued as indicating a general public policy, and that in keeping with same this limitation of two years should be implied on the term of contracts.

"Those provisions of government do fix the public policy with regard to them, but it cannot be held that the limitation that no appropriation of money shall be made for a longer term than two years is by implication a limitation upon a contract that does not re-

quire an appropriation to be made for a longer term than two years.

"Both subjects, appropriations and contracts, are of such importance, and each so common and so essential to the administration of the government, that it is reasonable to presume that if it had been the purpose of the makers of the Constitution to prohibit the making of contracts that would extend over a period of more than two years, they would have made that purpose plain by direct reference to that important subject."

Under the Contract in suit, the State, or the Hospital, was not obligated to buy any water from the City. It was obligated to pay monthly for the water it used at the specified rates. The City was obligated to furnish water in the amounts and at the rates stated in the Contract. The parallel between the provisions of this Contract and the Contract in Marrs is striking. We could not invalidate the Contract before us without doing violence to the Marrs decision. In our opinion, the Contract is valid and binding upon the City.

█ Even if the Contract is invalid, we are of the opinion that the City is in no position to complain. It is estopped to do so under the plainest principles of equity. In Boiles v. City of Abilene, 276 S.W.2d 922, Eastland C.C.A., writ ref., it was held that the City could not repudiate the obligations of a Contract on the ground of its partial invalidity while retaining its benefits, the Court saying: "It is the settled law that a municipal corporation is estopped to deny the validity of a contract where it exacts performance from the other party and accepts the benefits accruing to it therefrom."

The judgment of the trial court is affirmed.

Affirmed.