**Edward ROBINSON and Sandra Robinson, Appellants,**

v.

**Ramon GARCIA, Ramon Garcia, P.C., Texas Commerce Bancshares, Inc., Appellees.**

**No. 13–89–140–CV.**

Court of Appeals of Texas, Corpus Christi.

Jan. 31, 1991.

Rehearing Overruled Feb. 28, 1991.

Bob Roberts, Austin, Roberto Garcia, Garcia, Lopez & Rodriguez, Edinburg, Larry Doherty, Doherty & Williamson, Houston, for appellants.

Thomas J. Sims, Fred Knapp, Andrews & Kurth, Houston, John E. Lewis, Lewis, Pettitt & Hinojosa, McAllen, Dana Lester, Allison & Lester, Brownsville, Roger W. Hughes, Adams & Graham, Harlingen, William M. Mills, Atlas & Hall, McAllen, Guy Allison, Allison & Huerta, Corpus Christi, for appellees.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

KENNEDY, Justice.

Appeal is taken from the granting of two motions for summary judgment and the denial of one motion for partial summary judgment. Appellants, the Robinsons, sued attorney Ramon Garcia for breach of fiduciary duty, violations of the Canons of Professional Responsibility, and violations of the Texas Deceptive Trade Practices Act, alleging that Garcia failed to properly distribute the proceeds of a settlement agreement. The Robinsons joined Texas Commerce Bancshares, allegedly the stakeholder of the funds. Bancshares and Garcia each moved for summary judgment. Both motions were granted. The Robinsons moved for partial summary judgment. Their motion was denied. We affirm Bancshares' summary judgment, reverse Garcia's summary judgment, and find no error in the trial court's denial of the Robinsons' motion for partial summary judgment.

## I. Texas Commerce Bancshares' Summary Judgment

■ Bancshares' motion for summary judgment is supported by the affidavit of John P. Sherry, Senior Vice–President and General Counsel for Bancshares. The affidavit states that Bancshares "has not nor will it ever be holding sums pursuant to the sealed settlement agreement for disbursement to other parties in the litigation." The affidavit incorporates the final judgment from the underlying suit which evidences a settlement agreement between the Robinsons and Texas Commerce Bank–McAllen.

The Robinsons responded that Bancshares was the parent corporation of TCB–McAllen and that Bancshares was a party to the underlying suit and the resulting settlement agreement. There was no summary judgment proof supporting this response. The Robinsons contend that these facts raise an issue regarding Bancshares' control of TCB–McAllen and to "various theories of piercing the corporation veil between the two...."

The standard of review in summary judgment cases is well settled. The movant for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–59 (Tex.1985). When deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant is taken as true. *Id.* In that regard, every reasonable inference is indulged in favor of the non-movant and any doubts resolved in its favor. *Id.*

Bancshares' summary judgment proof shows a complete defense to appellants' claim, namely, that the bank held no money and had no obligation under the settlement agreement. Once Bancshares made this showing, it became the Robinsons' burden to present to the trial court those facts which would defeat Bancshares' right to summary judgment. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 679 (Tex.1979). The Robinsons' response raises no facts which would render Bancshares liable or subject it to an injunction. Because the trial court properly granted Bancshares' motion for summary judgment, there is likewise no error in the court's transferring venue to Hidalgo County, the county in which the cause of action accrued and the county of Garcia's residence. *See* Tex.Civ.Prac. & Rem.Code Ann. § 15.001 (Vernon 1986). The Robinsons' third and fourth points of error are overruled.

## II. Garcia's Summary Judgment

■ In his motion, Garcia asserted a single ground upon which he claimed an entitlement to summary judgment: that the Robinsons' claim was precluded as a matter of law because a common law accord and satisfaction had occurred between the parties. The pertinent facts are not disputed and are relatively uncomplicated. Attorney Garcia contended that he was entitled to attorney fees consisting of fifty percent of the Robinsons' ten million dollar settlement plus his expenses. In opposition, the Robinsons asserted that Garcia was entitled to only thirty-seven and one-half percent of the settlement plus his expenses. Because this appeal is taken from a summary judgment, we presume from the summary judgment proof that both beliefs were honestly and reasonably held.

Disputing the amount claimed by the Robinsons, Garcia tendered to them a check for $4,935,151.72 (just slightly more than Garcia concedes to be due under the fee agreement). The instrument contained the following restrictive endorsement:

acceptance in full and final settlement and in satisfaction of all claims Cause # C–1948–84–D (Our file # 797–84R).

To which, the Robinsons added the following language:

Except for disputed Attys fees and related claims Cause No. 87–35582 [the suit below]

and then proceeded to negotiate the check.

Section 1–207 of the Uniform Commercial Code provides:

A party who *with explicit reservation of rights* performs or promises performance

or *assents to performance* in a manner demanded or offered by the other party *does not thereby prejudice the rights reserved.* Such words as "without prejudice", "under protest" or the like are sufficient.

Tex.Bus. & Com.Code Ann. § 1.207 (Tex. UCC) (Vernon 1968) (emphasis added). Thus, the dispositive issue regarding Garcia's summary judgment is whether section 1–207 of the Uniform Commercial Code (Tex.Bus. & Com.Code Ann. § 1.207 (Tex. UCC) (Vernon 1968)[1]) applies to the tender of a "full-payment check."[2] We hold that it does.

### Texas Case Law

To date, three Texas appellate courts have encountered the full-payment check/section 1–207 issue: while one court did not acknowledge or refer to section 1–207, the other two courts recognized, at least in part, the implications of that section. In *Roylex, Inc. v. S & B Engineers, Inc.*, 592 S.W.2d 59 (Tex.Civ.App.—Texarkana 1979, no writ), the debtor disputed the amount of the debt and tendered a full-payment check to the creditor. Without endorsing the check, the creditor exchanged it for a cashier's check and deposited the proceeds. The creditor later sued for the remaining amount allegedly due; in response, the debtor raised the defense of common law accord and satisfaction.

Without reference to section 1–207, the Texarkana court applied the common law doctrine and held, "[w]hen Roylex received this check it was given the choice, either to accept the check as full payment of the debt, or to return same, unaccepted, and sue S & B for its full claim." *Roylex*, 592

S.W.2d at 60. The court did not consider a third option under section 1–207, whereby the creditor might have accepted the check under protest, reserving the right to sue later for the remaining amount allegedly due. *See* Krahmer, *Commercial Transactions*, 35 Sw.L.J. 191, 193–94 (1981). We note that even if the Texarkana court had addressed the section 1–207 issue, the result would have been the same because the creditor had not explicitly reserved its rights as required by that section.

The issue was subsequently raised in *Hixon v. Cox*, 633 S.W.2d 330 (Tex.Civ. App.—Dallas 1982, writ ref'd n.r.e.). In *Hixon*, the parties contracted for engineering and related services. After the creditor performed the services, he billed the debtor. The debtor then tendered a full-payment check to the creditor. The creditor marked through the debtor's restrictive endorsement, inserted a notation that the check was accepted as part payment only and without prejudice to his right to demand full payment of the balance of the account, and negotiated the check. Finding a valid accord and satisfaction, the Dallas court held in favor of the debtor. Regarding section 1–207, the court stated:

> [t]his provision appears as one of the general provisions applicable to subsequent chapters of the code, none of which purport to deal with the engagement of personal services or with disputes over payment for such services. ... No Texas case has applied § 1.207 to a check tendered in full settlement of a disputed account, whether the subject of the original dispute fell within one of the subjects of the code, or not.

---

1. The language of the Texas statute and the accompanying official comment are identical to that of the Uniform Commercial Code. The 1962 Official Text of the Code became effective in Texas on July 1, 1966 and was re-enacted in 1967 as part of the Texas Business and Commerce Code §§ 1.101–10.104. *See* 12 KRAHMER, TEXAS METHODS OF PRACTICE § 24.1 (Texas Practice 1990). Unless otherwise indicated, all references to the "Code" are to articles and sections of the Uniform Commercial Code as enacted verbatim by this State.

2. No single generally accepted term describes a check containing the restriction that by cashing the check the payee is assenting to the conditions under which the check is tendered. Although the terms "conditional check" and "conditioned check" have been used, they fail to define the instrument adequately because, under UCC section 3–104, a check must contain an unconditional order to pay. Consequently, we prefer the phrase "full-payment check." *See* Rosenthal, *Discord and Dissatisfaction: Section 1–207 of the Uniform Commercial Code*, 78 Colum. L.Rev. 48, 49–50 n. 6 (1978).

*Id.* at 331. The court, citing *Roylex,* determined that the creditor had two options: accept the check as full payment or return the check and sue for the full amount. The court then held that the creditor could not delete the restrictive endorsement and proceed with his own notation to "vary the terms and conditions" upon which the check was tendered. *Id.* at 332. To support this rule of law, the Dallas court cited *Groves v. Sawyer,* 384 S.W.2d 193 (Tex.Civ. App.—Eastland 1964, writ ref'd n.r.e.), a case decided two years prior to this State's adoption of the Uniform Commercial Code. The *Hixon* opinion has been interpreted as leaving unanswered the question of whether the application of section 1–207 might lead to a different result in cases involving the sale of goods, a Code article two transaction. *See* Krahmer, *Commercial Transactions,* 37 Sw.L.J. 146 (1983).

The last Texas court to face the issue was the Houston First Court, which has addressed it twice: initially, in *Pileco, Inc. v. HCI, Inc.,* 735 S.W.2d 561 (Tex.App.— Houston [1st Dist.] 1987, writ ref'd n.r.e.), and finally, in *Trevino v. Brookhill Capital Resources,* 782 S.W.2d 279 (Tex.App.— Houston [1st Dist.] 1989, writ denied).[3] In *Pileco,* the creditor filed suit on a sworn account. Before the debtor was served with citation, it tendered a full-payment check containing the restrictive endorsement, "[b]y signature hereto, endorser acknowledges full, complete and final settlement of all claims against payer." The creditor negotiated the check after adding protest language to the instrument. The creditor continued with the suit, seeking interest and attorney fees. The debtor argued accord and satisfaction. The creditor countered, arguing that by adding reservation language to the instrument, it had preserved its right under section 1–207 to

sue for any unpaid balance. The Houston First Court rejected the creditor's argument. The court's discussion of the issue, in its entirety, follows:

We have not been referred to a decision of any Texas court that has addressed [the creditor's] contention. But we note that the courts of several other states have refused to hold that U.C.C. sec. 1–207 displaces the common law doctrine of accord and satisfaction. *See Marton Remodeling v. Jensen,* 706 P.2d 607, 610 (Utah 1985); *Stultz Elec. Works v. Marine Hydraulic Eng'g.,* 484 A.2d 1008, 1011 (Me.1984); *Flambeau Prod. Corp. v. Honeywell Information Sys., Inc.,* 116 Wis.2d 95, 341 N.W.2d 655 (1984); *Air Van Lines, Inc. v. Buster,* 673 P.2d 774 (Alaska 1983); *see also* Annotation, *Application of UCC sec. 1–207 to Avoid Discharge of Disputed Claim Upon Qualified Acceptance of Check Tendered as Payment in Full,* 37 A.L.R. 4th 358 (1985). We agree with the conclusion of the Maine Supreme Court in *Stultz* that the well-established doctrine of accord and satisfaction should not be displaced, except by an express legislative action. *Stultz,* 484 A.2d at 1011; *see also* Tex.Bu[s]. & Com.Code Ann. sec. 1.103 and official comment 1 (Tex.U. C.C.) (Vernon 1968). We therefore overrule Pileco's contention regarding the effect of U.C.C. sec. 1–207 on the common law rule.

*Id.* at 562–63.[4] In short, the court chose to apply the common law accord and satisfaction doctrine in lieu of the Code. *See* Krahmer, *Commercial Transactions,* 42 Sw. L.J. 217, 221 (1988).

Most recently, in *Trevino,* the Houston First Court restated its position on the issue by repeating the language in both

---

3. The Houston First Court also faced the issue in *Yelderman v. McCarthy,* 474 S.W.2d 781, 784 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). In *Yelderman,* the creditor negotiated the check after adding reservation language to the debtor's restrictive endorsement. Without any reference to section 1–207, the court applied the common law accord and satisfaction doctrine.

4. We note that in *Air Van Lines, Inc. v. Buster,* 673 P.2d 774 (Alaska 1983), the court did *not* hold that the accord and satisfaction doctrine was unaffected by section 1–207; rather, the court held that if section 1–207 applies to a full-payment check, the creditor failed to explicitly reserve its rights. The court indicated, in dictum only, that it was "persuaded" by the majority view which finds section 1–207 inapplicable to a full-payment check. *See Air Van Lines,* 673 P.2d at 779.

*Pileco* and *Hixon.* In *Trevino,* however, the court's remarks concerning the issue do not form the basis of the judgment. Instead, the court held that the accord and satisfaction doctrine does not apply because the debtor was engaged in a fiduciary relationship with the creditor. *See Trevino,* 782 S.W.2d at 281–82. The defense of accord and satisfaction was superseded by virtue of the fiduciary relationship, the court's views on the section 1–207 issue notwithstanding.

Under the present facts, we are most concerned with the rules announced in the Texas cases of *Hixon* and *Pileco.* Our analysis of the issue involves the resolution of two essential questions: (1) to what transactions does section 1–207 apply, and (2) as to those transactions, does section 1–207 alter the common law doctrine of accord and satisfaction. *Hixon* primarily affects the former, *Pileco* the latter.

### *Application of Section 1–207*

Naturally, the first inquiry is whether the Code applies to our facts. The *Hixon* court concluded that unless the underlying transaction falls within the reach of the Code's article two, i.e., a sale of goods, section 1–207 does not apply. We strongly disagree. Section 1–207 is contained in chapter one of the Code. Chapter one establishes the general rules for use throughout all subsequent chapters of the Code. 12 J. KRAHMER, TEXAS METHODS OF PRACTICE § 24.2 (Texas Practice 1990) [hereinafter 12 Tex.Prac.]. Because there is no language limiting its application to specific transactions, section 1–207 certainly applies to any commercial transaction within the scope of any of the substantive Code articles. The use of a negotiable instrument containing a restrictive endorsement for the purpose of payment or attempted satisfaction of a contract debt is explicitly and specifically regulated by the provisions of the Code's article three (commercial paper). This, the *Hixon* court overlooks. Article three applies to all negotiable instruments, as shown by section 3–802(1) (Tex.Bus. & Com.Code § 3.802(a) (Tex.UCC) (Vernon 1968)) which specifically concerns the effect of payment by check on the underlying obligation. The

tendering of a full-payment check is thus undeniably a Code-covered transaction, regardless of the nature of the underlying obligation. *Horn Waterproofing Corp. v. Bushwick Iron & Steel Co.,* 66 N.Y.2d 321, 497 N.Y.S.2d 310, 315, 488 N.E.2d 56, 61 (1985) (underlying contract for roof repair); *accord AFC Interiors v. DiCello,* 46 Ohio St.3d 1, 544 N.E.2d 869 (1989) (interior decorating services); *Air Van Lines, Inc. v. Buster,* 673 P.2d 774, 779 n. 4 (Alaska 1983) (court expressly declines to limit section 1–207 to the sale of goods); *cf. Anderson v. Rosebrook,* 737 P.2d 417 (Colo.1987) (underlying dispute over a written lease); *Marton Remodeling v. Jensen,* 706 P.2d 607 (Utah 1985) (underlying contract for house remodeling). *But see Jahn v. Burns,* 593 P.2d 828, 831 (Wyo.1979). One distinguished commentator remarked:

> it seems fairly clear that if such a check is tendered in settlement, the transaction must be regarded as being within article three, and if section 1–207 is otherwise relevant its application cannot be avoided by showing either that article one was not meant to be applied to non-Code transactions or that the underlying obligation did not arise out of one of the other substantive articles of the Code.

Rosenthal, *Discord and Dissatisfaction: Section 1–207 of the Uniform Commercial Code,* 78 Colum.L.Rev. 48, 70 (1978) (footnote omitted).

By limiting the possible application of section 1–207 to the sale of goods independent of the mode of payment, the *Hixon* court ignores the fact that payment by check is a Code-covered transaction. Furthermore, the *Hixon* result leads to one rule for some transactions and a different rule for other transactions; the ultimate practical effect of such a course is confusion at the expense of the least sophisticated party. *See* Fry, *You Can't Have Your Cake and Eat it Too: Accord and Satisfaction Survives the Uniform Commercial Code,* 61 N.D.L.Rev. 381 (1985). We hold that section 1–207 applies to the present facts, as the tendering of a full-payment check is an article three, Code-cov-

ered, transaction.[5] Let there be no doubt, our opinion expressly and directly conflicts with that of the Dallas court in *Hixon*.

### Section 1–207 and the Doctrine of Accord and Satisfaction

■ Having found that section 1–207 applies to the present case, we turn to the question of that section's preemption of the common law accord and satisfaction doctrine. In *Pileco*, the Houston First Court relied primarily on an opinion from Maine's highest court. *See Stultz Elec. Works v. Marine Hydraulic Eng'g Co.*, 484 A.2d 1008 (Me.1984). The *Stultz* court reasoned that the Code's section 1–103 and its accompanying comment preclude a literal application of section 1–207. Section 1–103 provides:

Supplementary General Principles of Law Applicable

*Unless displaced by the particular provisions of this title, the principles of law and equity,* including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause *shall supplement its provisions.*

Tex.Bus. & Com.Code Ann. § 1.103 (Tex. UCC) (Vernon 1968) (emphasis added). The corresponding comment uses the following language:

this section indicates the continued applicability to commercial contracts of all supplemental bodies of law except insofar as they are *explicitly* displaced by this Act. . . .

Tex.Bus. & Com.Code Ann. § 1.103 comment 1 (Tex.UCC) (Vernon 1968) (emphasis added). From these two provisions, the *Stultz* court concluded that section 1–103 compels section 1–207 to *explicitly* displace the common law. Because no literal mention is made in section 1–207 of its superseding the common law accord and satisfaction doctrine, the court held that the

doctrine's application to the full-payment check scenario was left undisturbed. *See Stultz*, 484 A.2d at 1011.

By focusing on the comment's use of the term "explicit" and then requiring a subsequent Code provision to expressly declare the abrogation of a common law doctrine, the *Stultz* court gives an unwarranted restrictive interpretation to section 1–103. Furthermore, we are persuaded that interpreting section 1–103 to counteract a literal application of section 1–207 is inconsistent with the Code's own rules of construction as set out in section 1–102:

This title shall be *liberally* construed and applied to promote its underlying purposes and policies.

Underlying purposes and policies of this title are

(1) to simplify, clarify and modernize the law governing commercial transaction;

(2) to permit the continued expansion of commercial practices through custom, usage agreement of the parties;

(3) to make uniform the law among the various jurisdictions.

Tex.Bus. & Com.Code Ann. § 1.102(a), (b) (Tex.UCC) (Vernon 1968) (emphasis added). Allowing section 1–207 to alter the accord and satisfaction doctrine is perfectly compatible with the expansion of commercial practices and the perpetuation of usage and custom. *See* Grosse and Goggin, *The 1–207 Dilemma Revisited*, 16 N.Ky.L.Rev. 425, 433 (1989). While the *Stultz* court concludes that applying section 1–207 would make full-payment checks "obsolete" and "hinder the development of sound commercial practices," we are not so convinced.

In many cases the full satisfaction offer will be accepted and not challenged, whatever the law says. If the amount in dispute is not worth suing over, the creditor will not sue even if he has the option. In a large transaction, the parties can

---

**5.** We express no opinion of whether a debtor could avoid the application of section 1–207 by *otherwise* altering the instrument, thereby taking it outside the scope of article three. *See*

Rosenthal, *supra*, at 71 (citing Code sections 3–105(2)(a) and 3–805) (Tex.Bus. & Com.Code Ann. §§ 3.105(b)(1), 3.805 (Tex.UCC) (Vernon 1968)).

reach an accord and satisfaction by executing a separate agreement.

J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE § 13–24 (3d ed. 1988).

We find the reasoning of the *Stultz* court, as adopted in *Pileco* by the Houston First Court, unpersuasive. Moreover, the *Pileco* opinion completely fails to acknowledge a significant body of case law and legal commentary adopting or advocating the contrary interpretation, namely, that section 1–207 overrides the common law accord and satisfaction doctrine.

### *The Majority–Minority Schism* [6]

To date, the highest courts of New York, Ohio, South Dakota, and arguably Oregon and West Virginia have ruled that section 1–207 preempts the accord and satisfaction doctrine.[7] Likewise, four states have local comments to section 1–207 indicating that it applies to the full-payment check situation: Delaware, Florida, Massachusetts, and New Hampshire.[8] California's Legislature has also resolved the question in favor of applying section 1–207 to a full-payment check; the California Supreme Court thus never settled the issue. *See* Cal.Civ.Code § 1526(a) (West Supp.1990).

On the other hand, the highest courts of Colorado, Connecticut, Nebraska, Maine, Utah, Wisconsin, Wyoming, and perhaps Virginia and Alaska, admittedly the majority, have ruled that section 1–207 does not affect the accord and satisfaction doctrine.[9] Because the Code has been adopted throughout the United States and a major purpose of the Code is to harmonize the law of the various states, sister-state interpretations of the Code are more than mere persuasive authority, as evidenced by the Houston First Court's reliance on the *Stultz* opinion. *See* Tex.Bus. & Com.Code § 1.102(b)(3) (Tex.UCC) (Vernon 1968); 12 Tex.Prac. § 24.2, *supra,* at 5 n. 1. The courts holding that section 1–207 does not abrogate the accord and satisfaction doctrine have generally followed three lines of reasoning, not including the *Stultz* and *Pileco* courts' perceived overlap of section 1–103 and section 1–207.

The first line of reasoning turns on section 1–207's use of the phrase "assents to performance in the manner ... offered." This approach is best summarized by Professors White & Summers:

Those arguing that 1–207 does not alter the common law rule typically start with the position, generally unassailable, that

**6.** Throughout this opinion, we cite cases from sister states. Because of the divisiveness of many states' lower appellate courts, we regard authority other than that of a state's highest court as generally unpersuasive. In far too many instances, the highest courts of other states have resolved the issue opposite to that of many or all of its lower appellate courts.

**7.** *See AFC Interiors v. DiCello,* 46 Ohio St.3d 1, 544 N.E.2d 869 (1989); *Horn Waterproofing Corp. v. Bushwick Iron & Steel Co.,* 66 N.Y.2d 321, 497 N.Y.S.2d 310, 488 N.E.2d 56 (1985); *Charleston Urban Renewal Authority v. Stanley,* 346 S.E.2d 740, 743 n. 2 (W.Va.1985) (dictum) (court indicating it might apply section 1–207 if the underlying contract involved the sale of goods); *Kilander v. Blickle Co.,* 280 Or. 425, 571 P.2d 503, 505 (1977) (dictum) (court stating that section 1–207 may have changed the common law); *Scholl v. Tallman,* 247 N.W.2d 490 (S.D. 1976).

**8.** *See* Del.Code Ann. tit. 6, § 1–207 (1975); Fla. Stat.Ann. § 671.1–207 (West 1966); Mass.Ann.Laws Ch. 106, § 1–207

(Michie/Law.Coop.1984); N.H.Rev.Stat.Ann. § 382A:1–207 (1961) (cited in Note, *Majestic Building Material Corp. v. Gateway Plumbing, Inc.: Missouri Courts Alter the Common–Law Accord and Satisfaction Doctrine By Applying U.C.C. Section 1–207 to Full–Payment Checks,* 31 St. Louis U.L.J. 133, 144–45 n. 85 (1986)).

**9.** *See John Grier Constr. Co. v. Jones Welding & Repair Inc.,* 238 Va. 270, 383 S.E.2d 719 (1989) (dictum) (debtor unaware of creditor's restrictive endorsement); *County Fire Door Corp. v. C.F. Wooding Co.,* 202 Conn. 277, 520 A.2d 1028 (1987); *Anderson v. Rosebrook,* 737 P.2d 417 (Colo.1987); *Cass Constr. Co. v. Brennar,* 222 Neb. 69, 382 N.W.2d 313 (1986); *Marton Remodeling v. Jensen,* 706 P.2d 607 (Utah 1985); *Stultz Elec. Works v. Marine Hydraulic Eng'g Co.,* 484 A.2d 1008 (Me.1984); *Flambeau Prods. Corp. v. Honeywell Information Sys., Inc.,* 116 Wis.2d 95, 341 N.W.2d 655 (1984); *Air Van Lines, Inc. v. Buster,* 673 P.2d 774 (Alaska 1983) (dictum) (creditor did not explicitly reserve its rights); *Gallagher Lumber Co. v. Shapiro,* 137 Vt. 139, 400 A.2d 984 (1979) (brief reference to Code); *Jahn v. Burns,* 593 P.2d 828 (Wyo.1979).

the offeror is "master of his offer."[10] They point out that the drawer has made an offer, namely that of full payment, and they argue that allowing the payee to accept the money without the other terms of the offer is not only unfair, but also in direct conflict with the traditional notions of contract formation.

J. WHITE & R. SUMMERS, *supra*, § 13–24 at 609 (footnote in original). For example, in *Jahn,* the Wyoming court read the language "assent to performance in the manner ... offered" as "acceptance of the condition." Thus, the argument goes, when a creditor reserves its rights on a full-payment check, it has not assented to the debtor's performance *in the manner offered.* Both the case law and the scholarly literature have criticized such a construction. Walter, *The Rise and Fall of U.C.C. Section 1–207 and the Full Payment Check—Checkmate?,* 21 Loy.L.A.L.Rev. 81, 98–99 (1987). Because there is never an assent to "performance in a manner ... offered" when dealing with a reservation of rights situation, this interpretation defeats the obvious policy expressed in section 1–207, namely, that a party be permitted to accept non-conforming performance while reserving its rights under the contract. *Id.*

Similarly, Nebraska, Utah, and the Dallas *Hixon* court assert that because section 1–207 speaks of "performance," rather than "payment," it does not apply to the full-payment check. The comment to section 1–207 provides, in part:

[t]his section provides machinery for the continuation of performance along the lines contemplated by the contract despite a pending dispute, by adopting the mercantile device of going ahead with *delivery, acceptance, or payment* "without prejudice," "under protest," "under reserve," "with reservation of all our rights," and the like.

Tex.Bus. & Com.Code Ann. § 1.207 comment 1 (Tex.UCC) (Vernon 1968) (emphasis added). Unquestionably, the use of the term "performance" encompasses delivery, acceptance *and payment.* *Hixon's* contrary interpretation is untenable.

The final line of reasoning is based on what is generally referred to as "public policy considerations," namely, that the application of section 1–207 will destroy a valuable settlement tool and constitute an added burden on the judicial system. *See Stultz,* 484 A.2d at 1012; *Fritz v. Maranette,* 404 Mich. 329, 273 N.W.2d 425, 428–29 (1978) (potential to substantially increase litigation). A typical argument being:

[i]f the court were to conclude that a creditor could reserve his rights on a "full payment check," a convenient and informal device for the resolution of disagreements in the business community would be seriously impeded. The court is hesitant to impair such a valuable, informal settlement tool where there is no indication that the legislature intended that result.

Walter, *supra,* at 102 (quoting *Chancellor, Inc. v. Hamilton Appliance Co.,* 175 N.J. Super. 345, 418 A.2d 1326, 1330 (1980)). From a policy standpoint, there are two options: select the interpretation of section 1–207 that will further the private resolution of disputes, rather than burden an allegedly overburdened court system; or select the interpretation that balances the scales of justice—one that does not unduly favor the debtor over the creditor. We refuse to reject the better substantive law rule merely because of a court system that is perceived to be administratively failing. There is no justification for responding to a substantive legal question with an administrative response. *See* Walter, *supra,* at 102. Furthermore, assuming the creditor is entitled to the full amount claimed, it is incomprehensible that a lawsuit for the balance of a debt, as opposed to one for the entire debt, would place an additional burden on the judicial system.

Contrary to the majority of the courts, we hold that section 1–207 applies to the tender of a full-payment check. First and foremost, the language of section 1–207

---

**10.** Note that section 2–207 has changed the common law *rule that the offeror is* the master of his offer. In many cases under 2–207 the offeror or will find himself bound to a contract that omits terms that were in his offer to which he never explicitly agreed.

fits the transaction perfectly. *See* J. WHITE & R. SUMMERS, *supra,* § 13–24 at 609. Moreover, in 1961, Cornell Law Professors Hogan and Penny advanced the following interpretation which was contained in the Report of the Commission on Uniform State Laws:

> This section permits a party involved in a Code-covered transaction to accept whatever he can get by way of payment, performance, etc., without losing his rights ... to sue for the balance of the payment, so long as he explicitly reserves his rights.
>
> ... The Code rule would permit, in Code-covered transactions, the acceptance of a part ... payment tendered in full settlement without requiring the acceptor to gamble with his legal right to demand the balance of the payment.

REP. OF THE COMM'N ON UNIFORM STATE LAWS TO LEGISLATURE OF STATE OF N.Y. 19–20 (1961) (quoted in Rosenthal, *supra,* at 61–62; and Hawkland, *The Effect of U.C.C. § 1–207 on the Doctrine of Accord and Satisfaction by Conditional Check,* 74 Com L.J. 329, 332 (1969) (quoted in part)).

After the first Official Text of the Uniform Commercial Code was completed, the New York Law Revision Commission suggested several changes. *See* 12 Tex.Prac., *supra,* § 24.1. From the Commission's suggestions, a 1957 Official Text was drafted and promulgated, followed by further revisions in 1958 and 1962. *Id.* In 1966, the 1962 Official Text of the Uniform Commercial Code was legislatively approved in Texas. *Id.* Because Texas has no local commentary to section 1–207, we find the 1961 report by Professors Hogan and Penny to the Commission to be a controlling piece of legislative history. Consequently, we hold that the Legislature in fact intended section 1–207 to apply to a full-payment check.

Furthermore, equitable considerations in debtor-creditor transactions support our interpretation of section 1–207. Once again, Professors White & Summers have articulated the problem best:

> [o]ffering a check for less than the contract amount, but "in full settlement" inflicts an exquisite form of commercial torture on the payee. If the offer is reasonable it creates a marvelous anxiety in some recipients: "Shall I risk the loss of $9,000 for the additional $1,000 that the bloke really owes me?"

J. WHITE & R. SUMMERS, HANDBOOK OF THE UNIFORM COMMERCIAL CODE § 13–21 at 544 (2d ed. 1980). In the present case, the facts are far more compelling. Should the Robinsons have risked the loss of nearly five million dollars for the additional one and a quarter million dollars that they contend that Garcia really owes them? We think not. By a proper application of section 1–207 to the full-payment check situation,

> a creditor would no longer be at the mercy of the debtor facing the dilemma of either accepting the lesser amount as full settlement or returning the check and gambling his chances of collecting anything. Instead, the risk of loss would be upon the debtor who, after having received protest from the creditor, could stop payment on the check.

*AFC Interiors,* 544 N.E.2d at 872 (citation omitted).

In rejecting the majority position on this issue, we are acutely aware of the Code's directive to further the uniformity of laws among the various jurisdictions (*see* Tex. Bus. & Com.Code Ann. § 1.102(b)(3) (Tex. UCC) (Vernon 1968)), yet we are foremost concerned that our decision be right, rather than simply parallel with the majority of states. Indeed, the single fact that a majority of states recognize a certain rule of law has never been a sufficient reason for this State to follow suit. *See Reagan v. Vaughn,* 804 S.W.2d 463, 465 n. 4 (Tex. 1990) (quoting *Hill v. Kimball,* 76 Tex. 210, 13 S.W. 59 (1890)). We sustain the Robinsons' first and second points of error insofar as they contest the application of the accord and satisfaction doctrine.

### III. The Robinsons' Motion for Partial Summary Judgment

■ The Robinsons argue that the trial court erroneously denied their motion for

partial summary judgment. We disagree. The Robinsons asserted two grounds upon which they contend an entitlement to a partial summary judgment: (1) that the third amended contract for attorney fees was "presumably fraudulent" because it was entered into after the attorney-client relationship had commenced, and (2) that the same contract was not supported by consideration.

There is a presumption of unfairness attaching to a fee contract entered into during the existence of the attorney-client relationship, and the burden of showing the fairness of the contract is on the attorney. *Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex.1964). Furthermore, effect is generally not given to a contract that obligates the client to pay to the attorney a sum of money in excess of that which has been agreed on by them in their original negotiations. *Waterbury v. City of Laredo*, 68 Tex. 565, 5 S.W. 81, 86 (1887). Nevertheless, if the original contract has been terminated by mutual agreement of the parties, a new contract providing for the payment of a greater sum than that specified in the former agreement is valid and binding. *See Cahill v. Dickson*, 77 S.W. 281, 288–89 (Tex.Civ.App.1903, writ ref'd).

Attached to Garcia's response is his own affidavit in which he details the facts surrounding the execution of the third contract and asserts that the Robinsons agreed to its execution. Garcia has thus raised a fact issue. While we recognize that a presumption of unfairness exists regarding the execution of the third contract, the presumption is neither conclusive nor irrebuttable. Garcia will have the burden to prove to the trier of fact that the employment contract was fair and reasonable. The Robinsons have not provided summary judgment proof showing that they are entitled to judgment as a matter of law.

Regarding the Robinsons' second ground, Garcia's affidavit asserts facts showing that the second and third contracts were entered into when additional legal counsel was retained to assist Garcia.

A fact issue regarding consideration was raised. The summary judgment was properly denied. The Robinsons' first and second points are overruled inasmuch as they contest the denial of their motion for partial summary judgment. We AFFIRM Bancshares' summary judgment, REVERSE Garcia's summary judgment and REMAND for a trial on the merits.

Responding to the dissenting opinion, we offer the following comments.

Asserting the defense of accord and satisfaction, Garcia cited only two cases in his motion for summary judgment: *Hixon* and *Pileco*. Both cases explicitly and undeniably address the full-payment check issue and the effect of the *Uniform Commercial Code's* section 1–207 on the accord and satisfaction doctrine. The trial court's summary judgment was granted on the application of this rule of law alone.

The dissent quotes Texas Rule of Appellate Procedure 52(a), while the appropriate preservation rule in summary judgment cases is Texas Rule of Civil Procedure 166a(c) which states, in part, "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." The sole ground for Garcia's summary judgment motion was the application of the law as announced in *Hixon* and *Pileco*. It was expressly presented to the trial court.

The dissent would have us limit our review to the specific factual arguments advanced to any given rule of law, yet forbid us from accepting or rejecting the rule of law itself. Such a narrow conception of this Court's powers of appellate review would serve little purpose except to fill the Texas reporters with useless and random applications of facts to erroneous underlying legal presumptions.

As a practical matter, denying this Court the opportunity to decide what law it will choose, when the Texas Supreme Court has not yet spoken, would bind us to any given rule of law, erroneous or not, which was not expressly challenged by the parties and, moreover, serve as a precedent for future cases brought in our jurisdiction. It

is tantamount to having the parties stipulate the law, forcing this Court to blindly accept that legal stipulation, and then handcuffing us to that rule of law for future cases.

Perhaps the fault in this reasoning is best illustrated by turning to the dissent itself. To reach a contrary result, the dissent cites the very authority that he would deny this Court the opportunity to question.

Concurring opinion by NYE, C.J.

Dissenting opinion by SEERDEN, J.

NYE, Chief Justice, concurring.

I concur with the majority opinion expressed by Justice Kennedy that the recipient of a "full-payment check" may expressly reserve his rights concerning an additional amount in dispute between the parties by stating such a reservation on the (subsequently) negotiated instrument. Specifically, the Robinsons preserved their right in this case to contest Attorney Garcia's claim for attorney's fees. I also agree with the majority's commentary in response to Justice Seerden's dissenting opinion. Respectfully, the dissenting opinion is mistaken by asserting that the majority's interpretation of section 1–207 constitutes unassigned error.

Nevertheless, the summary judgment favoring Attorney Garcia should be reversed because of the conflicting evidence presented by both the Robinsons and Garcia. This case requires a jury's examination of the transactions between Attorney Garcia and the Robinsons as they relate to the attorney-client relationship and to professionalism within the legal community. As revealed below, this factual examination shows ample conflicting evidence that renders improper an affirmance of Garcia's summary judgment. I would sustain the Robinsons' second and third points of error and reverse and remand this case for trial on the merits.

On several occasions prior to the institution of the underlying suit, Attorney Garcia performed legal services for the Robinsons. Through these services, the Robinsons and Garcia developed a mutually satisfactory professional relationship. Accordingly, the Robinsons sought Garcia's professional advice and services when, in 1986, the Robinsons' business relationship with the Texas Commerce banking institutions eroded to the point that their legal rights were violated by those institutions. Attorney Garcia accepted responsibility for pursuing the claim and presented his employment contract to the Robinsons.

Garcia's employment agreement established that 33⅓% of the "*judgment* entered on behalf of the clients [Robinsons]" would be set aside to him for attorney fees if the case was settled before trial. In the event of a trial, attorney fees would rise to 37½% of the total "judgment." The contract further provided that in the event of an appeal to the Supreme Court of Texas, the attorney fees would be "an additional" but unspecified amount.[1] The agreement also provided that Garcia bear all litigation expenses; however, "if recovery is realized herein" the expenses would be paid from the recovery.[2]

Garcia filed suit and the parties began discovery. Several weeks before the trial and without the Robinsons' knowledge, Garcia hired Tom Matlock, a local attorney, to assist him in preparing for and during trial. Subsequently, on March 23, 1987,

---

1. The Robinsons presented evidence that because they were in bankruptcy proceedings, Garcia had to receive permission from the United States Bankruptcy Court not only to file the action against the financial institutions but also to assure the court that no fees would be assessed against the bankruptcy estate or the Robinsons should they not prevail in their suit. The Robinsons allege that Garcia neither subsequently petitioned nor received permission from the court to amend the fee agreement. This evidence was not properly authenticated and, therefore, is not properly before this Court. *Kotzur v. Kelly,* 791 S.W.2d 254, 256–57 (Tex. App.—Corpus Christi 1990, no writ).

2. This contract was silent regarding whether expenses would be deducted first with the balance divided among the parties as stipulated or whether the expenses would be deducted from the Robinsons' or Garcia's share. Garcia ultimately deducted all expenses from the Robinson's share of the recovery.

following a particularly harrowing third deposition of Mrs. Robinson, Garcia presented her with a new employment contract. Garcia explained that the case required the employment of another attorney to assist in trial preparation and for the trial itself. Garcia asserts in his pleadings that the consideration for this new agreement was that the Robinsons were not paying their litigation expenses despite an alleged oral agreement to do so. This was an apparent attempt by Garcia to prove an oral modification to the written contract's provisions for payment of expenses. Garcia alleged that the new agreement essentially reimbursed Garcia for the payment of those expenses.

The alleged second fee agreement specified that 40% of the "total recovery" would be paid to Garcia as attorney fees should the matter be settled "after a lawsuit has been filed." The contract also specified that an additional 5% of the total recovery would be taken as attorneys' fees in the event of an appeal to an appellate court by any party. This agreement provided that all expenses incurred in the prosecution of the claim would be paid by the Robinsons from their portion of the recovery. However, should no recovery occur, Garcia would pay all expenses. Mrs. Robinson signed the agreement. The case proceeded to trial, and on May 20, 1987, the jury found for the Robinsons in the amount of $59,260,000.00.

Following the verdict, the parties began planning their appeal strategies. In June, 1987, Garcia once again approached the Robinsons stating that he required an even larger percentage of the total recovery than the second agreement. He explained that the financial institutions were amassing Texas' most prominent appellate lawyers to appeal the verdict. To defend the verdict, Garcia needed the services of an experienced appellate attorney. Garcia told the Robinsons that he hired a specific, well-known Houston appellate attorney to prepare the appeal. Instead, Garcia hired John Lewis, another local attorney, to aid settlement negotiations and to prepare an appeal. The Robinsons assert that Garcia explained to them that this modification to

the second employment contract would not be enforceable unless an appeal was taken.

With these assurances from Attorney Garcia, the Robinsons executed an Addendum to [the alleged second] General Contract of Employment for Legal Services. This addendum provided that in recognition of "the need to employ additional legal assistance to obtain a final judgment," Garcia would receive as attorney fees 50% of the total recovery realized in the suit. Even this third arrangement would call for the deduction of expenses before the division of the recovery. This addendum purported to incorporate by reference the remaining provisions of the March, 1987, contract.

Thereafter, Garcia negotiated a $10,000,-000.00 settlement agreement by which 60% of the total settlement amount would be paid immediately and the remaining 40% would be paid in a few months. Garcia received the first installment and later tendered the Robinsons a check in the amount of $4,935,151.72. He explained that he calculated what the Robinsons were due under the terms of the final agreement with expenses in the amount of $64,848.28 charged to the Robinsons' share of the recovery. The check contained the following restrictive endorsement by attorney Garcia:

acceptance in full and final settlement and in satisfaction of all claims Cause # C–1948–84–D (Our file # 797–84R)

The Robinsons returned the check to Garcia along with a letter demanding the $6,250,000.00 that they asserted was due under the provisions of the initial fee agreement.

Garcia then returned the check to the Robinsons with a letter telling them to seek another lawyer's opinion regarding the situation and to have that lawyer contact him. The Robinsons hired another attorney. They cashed the check and filed this suit seeking $1,314,848.28, the difference between Garcia's check and the first fee agreement. This represented the remaining amount due under the initial fee agreement, plus damages. Before cashing the

check, the Robinsons added the following endorsement:

> Except for Disputed Attys fees and related claims Cause No. 87–35582 [the suit below]

Then, the Robinsons negotiated the check.

Garcia asserted that the third agreement between the Robinsons and him was valid and enforceable and that cashing the check that he tendered to them constituted a common law accord and satisfaction and that the Robinsons had no basis to contest his fee. The trial court denied the Robinson's motion for partial summary judgment and granted Garcia's motion for summary judgment, dismissing the Robinsons' suit with prejudice. This appeal followed.

The Robinsons sought enforcement of the initial employment contract, claiming that the alleged subsequent agreements failed for lack of consideration. The Robinsons also asserted that Garcia misrepresented facts and fraudulently induced them to execute the second and third agreements.

The relationship between an attorney and his client should withstand the closest possible scrutiny. This relationship must meet or exceed the highest possible moral test. Attorney-client dealings are subject to the same scrutiny, intendments, and imputations as a transaction between a trustee and his beneficiary. *Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex.1964). In *Archer*, the Texas Supreme Court put this relationship another way, emphasizing that a contract for employment made in the course of the legal representation is subject to the presumption that such an agreement is tainted with fraud on the part of the attorney. *See Cole v. McCanlies*, 620 S.W.2d 713, 715 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.); *Johnson v. Stickney*, 152 S.W.2d 921, 924 (Tex.Civ.App.—San Antonio 1941, no writ).

An attorney is not legally precluded from contracting for just compensation with his client, but because of the special professional relationship, the contract must be fair, honest, reasonable, and made freely and voluntarily by the client after complete disclosure of all contract details. The client places confidence in his attorney that his legal problems will be resolved professionally with his interest being paramount. This client confidence gives the attorney an unequal advantage when negotiating a fee agreement. This is especially true during the course of representation. The *Archer* court reasoned that the attorney must bear the burden of showing that such an agreement is perfectly fair, adequate and equitable and that the attorney did not take advantage of the client's confidence to create an unfair agreement. *Archer*, 390 S.W.2d at 739 (quoting Pomeroy, Equity Jurisprudence, § 960d (5th ed. 1941)).

In the present case, the record shows that Attorney Garcia used his position to make the Robinsons acquiesce to two increases in attorney's fees after entering into an initial fee arrangement. Under the provisions of the first contract, Garcia would have received $3,750,000.00 in attorney's fees. The (alleged) second contract would have raised the fee recovery to $4,000,000.00, exclusive of expenses. The addendum (the third contract) raised attorney's fees to five million dollars. Garcia tendered the Robinsons a check for $4,935,151.72, this being $5,000,000.00 less $64,848.28 in claimed expenses, keeping $5,064,848.28 for himself.

It is apparent that the parties here were in an unequal bargaining position. Garcia had all of the money. The Robinsons had none. Had Garcia placed the settlement money into the court's registry, the parties would have been more equal. Instead, Garcia told the Robinsons to seek another attorney's advice if they did not agree with his disposition of the settlement funds.

The check's restrictive endorsement stating that the amount was in full and final settlement and satisfaction of all claims in the Robinsons' suit against the banking institutions, undoubtedly put the Robinsons in the disabling position of either accepting what Garcia wanted or being deprived of the amount that was indisputedly and rightfully theirs. If the Robinsons accepted Garcia's check without reserving their rights to the disputed amount, they would have lost one and a quarter million dollars to Garcia. If they refused the check and

waited until a subsequently determined lawsuit gave them what they alleged to be theirs, they would have lost, at least for the interim period, the benefit of the recovery and the interest it would have earned.

Ethical Consideration 9–6 of the Code of Professional Responsibility applicable during the creation of the initial and alleged subsequent fee agreements mandates the following:

> every lawyer owes a solemn duty to uphold the integrity and honor of his profession; to encourage respect for the law and for the courts and the judges thereof; to observe the Code of Professional Responsibility; to act as a member of a learned profession, one dedicated to public service ... **to conduct himself so as to reflect credit on the legal profession and to inspire the confidence, respect, and trust of his clients and of the public; and to strive to avoid not only professional impropriety but also the appearance of impropriety.** (emphasis added)

Canons 9 and 1 of the Texas Code of Professional Responsibility [3], emphasize:

> Canon 9: A lawyer should avoid even the appearance of professional impropriety.
> Canon 1: A lawyer should assist in maintaining the integrity and competence of the legal profession.

There are several instances in which there is a question regarding whether an "appearance of impropriety" existed. Most notable are the circumstances and motivations surrounding and ultimately producing the alleged second and third fee agreements. Another is whether the fee agreements are conscionable. A third concerns the propriety of the restrictive language

which Garcia added to the Robinson's check.

Although most contingency fee arrangements are proper, DR 2–106 states that a lawyer shall not enter into such an arrangement for, charge, or collect an illegal or clearly excessive fee. Texas Code of Professional Responsibility, DR 2–106(A) (1988) (repealed).[4] A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors considered under DR 2–106(A) as guides in determining the reasonableness of a fee include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained ...
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.[5]

Texas Disciplinary Rule of Professional Responsibility, Rule 1.04 (1990), the successor to DR 2–106, goes further by stating that contingent fee agreements shall be in writing and shall state the method by which the fee is to be determined. If there is a difference in the percentage or percent-

---

3. Supreme Court of Texas, Rules Governing the State Bar of Texas art. X, § 9 (Code of Professional Responsibility) Canon 1, 9 (1988) [hereinafter Texas Code of Professional Responsibility], was repealed in 1989 and replaced by Supreme Court of Texas, Rules Governing the State Bar of Texas art. X, § 9 (1990) [hereinafter Texas Disciplinary Rules of Professional Conduct or "the Rules"].

4. Rule 1.04(a) of the new Texas Disciplinary *Rules of* Professional Conduct requires that the fee neither be illegal nor unconscionable. A fee

is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable. Supreme Court of Texas, Rules Governing the State Bar of Texas, art. X, § 9, Rule 1.04(a) (1991).

5. Section (B)(8) was modified in presently applicable Rule 1.04(b)(8) to require consideration of whether the fees are fixed or contingent on the results obtained or the uncertainty of collection before the legal services have been rendered.

ages accruing to the lawyer in the event of settlement, trial, or appeal, the fee agreement shall state the percentage for each. Regarding the division of legal fees for services, Texas Rule of Professional Responsibility DR 2–107 (repealed) states that a division or agreement for division of a fee between lawyers who are not in the same firm shall not be made unless:

(1) the client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

(2) the division is made in proportion to the services performed and responsibility assumed by each ...

(3) the total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.[6]

Courts will not enforce contracts made in contravention of the law or public policy of this State. *Quintero v. Jim Walter Homes, Inc.*, 709 S.W.2d 225, 229–230 (Tex. App.—Corpus Christi 1985, writ ref'd n.r. e.); *see also Woolsey v. Panhandle Ref. Co.*, 131 Tex. 449, 116 S.W.2d 675 (1938). The manner and means by which Garcia extracted two successively higher fee modifications from the Robinsons without full and candid disclosures should be given the closest scrutiny not only by the court but also by the State Bar Committee on Professional Conduct. The facts also indicate that Garcia may have promised additional services and additional lawyers for the higher fees. These factors, supported by evidence, create a fact issue.

A trial will allow Garcia the opportunity to disprove the legal presumption of overreaching and fraud surrounding the creation of the second and third agreements, in addition to determining whether they were illegal, or at their inception, clearly excessive. Furthermore, a trial will scrutinize the division of fees and the responsibility assumed by each attorney over and above the work that was to be performed by Garcia. *See* DR 2–107.

6. Currently codified as amended as Texas Disciplinary Rule of Professional Responsibility,

An attorney holds the best interests of his client in fiduciary trust. Whether occupying a position as formal fiduciary or the more informal position of "confidential relationship," one standing in a position of advantage and having the benefit of inside information, holds a duty of disclosure and undivided loyalty to the person who has instilled that trust. When a person holds a position of trust and confidence for another, the failure to disclose facts which are his duty to disclose is as much a fraud as an actual misrepresentation of the true facts. *Cartwright v. Minton*, 318 S.W.2d 449, 453 (Tex.Civ.App.—Eastland 1958, writ ref'd n.r.e.).

Garcia essentially had control of the entire settlement amount. This control gave Garcia a position of power over his clients which they claim forced them to accept the monies Garcia tendered. If the Robinsons refused Garcia's offer, they lost management of that portion of the recovery that was undisputed and the interest which would accrue from the principal of same. The Robinsons are entitled to a trial on the issue of whether Garcia, the fiduciary, acted in furtherance of his clients' or his own best interests by tendering a payment-in-full check to the Robinsons.

Canon 9's mandate to avoid the mere appearance of impropriety cannot be ignored. A lawyers' adherence to this canon will ensure a spotless professional reputation and a respected status in the human community. Attorneys, because of their understanding of the law, must devoutly avoid all situations giving the appearance of improper advantages taken of their nonlegal brethren. The legal profession is illserved when a lawyer abuses his client's trust to afford himself monetary gain or to improve his position over the party who first placed his total trust in the attorney. Indeed, the entire legal profession is denigrated by the mere insinuation that one of its members might lack such professional and personal integrity.

Rule 1.04(d), (f) (1990).

The old canons, ethical considerations and disciplinary rules have been incorporated into the new Rules. They help set the standard by which a lawyer's integrity is measured. An attorney must not only be ethical in representation of his client's cause, he must also be completely ethical in client relations. Integrity may have had a price where, as here, the evidence raises a fact question regarding the extent of Attorney Garcia's self-interest in assuring that he would be more than adequately compensated for his legal services.

Even at personal financial cost, an attorney must guard against the temptation of overreaching or indulging in fraudulent conduct when fees and client relations are involved. This case cries out for a full trial of all of the issues involved so that, ultimately, the public will praise, rather than condemn, the legal profession. Accordingly, I agree that this case should be REVERSED AND REMANDED for trial.

SEERDEN, Justice, dissenting.

While I join with Justice Kennedy's opinion as it affirms the summary judgment as to Texas Commerce Bancshares, I disagree with the result reached by him as to Garcia's motion for summary judgment.

Specifically, I disagree with Justice Kennedy's conclusion that the dispositive issue regarding Garcia's summary judgment is whether section 1.207 of the Uniform Commercial Code (Tex.Bus. & Com.Code Ann. § 1.207 (Vernon 1968)) applies to a "full-payment" check. This issue was not raised by the Robinsons in their reply to Garcia's motion for summary judgment, their briefs before this Court or on either occasion when the matter was submitted for oral argument. In fact, the only mention of this issue in this case is in Justice Kennedy's opinion.

Appellants' first point of error is the only one dealing with the granting of Garcia's motion for summary judgment. It states:

the trial court erred in granting the motion for summary judgment of appellants Garcia for each of the following reasons:

A. Each of the "alterations" to the contingent fee contract was presumptively fraudulent, and no evidence to rebut the presumption was produced by Garcia.

B. Each of the "alterations" was without legal consideration.

C. Each of the "alterations" was induced by fraud, overreaching and undue influence.

D. There was no accord and satisfaction of the obligations of Garcia by the cashing of the check presented to the Robinsons for each of the following reasons:

1. The amount of the check was not within the disputed amount of the fee.

2. The cashing of the check was the result of fraud, overreaching and undue influence on the part of Garcia.

Garcia's motion for summary judgment includes copies of the initial employment contract, the second contract raising the percentage in the event of trial to forty percent and providing an additional five percent in the event of an appeal, signed by the Robinsons on March 23, 1987, and the addendum to the contract reciting that a jury award in the underlying suit had been obtained for $59,260,000.00, recognizing the need to employ additional legal assistance to obtain a final judgment and amending the percentage of recovery to fifty percent of the total recovery, whether obtained by execution of a final judgment or by settlement. This document was signed June 16, 1987.

The motion also contains, as exhibits, copies of the final judgment, the settlement agreement, correspondence, checks and settlement statements which have previously been referred to in this opinion. An affidavit of Garcia is attached which states, in addition to identifying the described documents and relating facts already mentioned, that the balance of the money due as a result of the underlying suit was paid to him on January 4, 1988.

A portion of the deposition of appellant, Edward Robinson, was included in Garcia's motion for summary judgment. The deposition testimony establishes that Robinson received Garcia's letter of August 7, 1987, and the proposed settlement check containing the notation "acceptance in full and

final settlement and in satisfaction of all claims in ... [the case in question]," that Robinson added the phrase, "[e]xcept for disputed attorney's fees and related claims in Cause No. 87–35586," and negotiated the check on August 10, 1987, that Cause No. 87–35586 is the number assigned to the present litigation in Harris County, and that this litigation had been filed on August 6, 1987.

Garcia argues that the negotiation and acceptance of his check by appellants, after they had retained another attorney and filed suit against him in connection with the dispute over the amount of the fee, constitutes accord and satisfaction of the debt, as a matter of law and, consequently, he is entitled to a summary judgment. Accord and satisfaction is an affirmative defense.

Appellants' response incorporates, by reference, their Motion for Partial Summary Judgment and also includes an affidavit of Edward Robinson. This affidavit recites facts relating to the three employment contracts with Garcia. It recites material which establishes a fact question as to whether either of the amendments to the original contract would be enforceable. He also recites that the matters "alleged in the Plaintiffs' Motion for Partial Summary Judgment are true and correct to my personal knowledge." The motion for partial summary judgment includes as attachments unverified copies of what purport to be proceedings in a United States Bankruptcy court case involving appellants and Bancshares and TCB–McAllen. These documents relate to the first employment contract between the Robinsons and Garcia and, if authentic, show that such court authorized the proceeding with what we have termed the underlying lawsuit in accordance with the initial employment contract between the Robinsons and Garcia. There is no indication of whether the Robinsons were in bankruptcy at any other relevant time.

Appellants' response states that no consideration was given for the execution of the contracts subsequently raising the contingent fee. It states that appellants were required by economic necessity to accept the check representing 50% of the recovery and that the cashing of the check was involuntary and caused by undue coercion by Garcia, who was at time acting as a fiduciary on their behalf and as their attorney. The motion also incorporates Edward Robinson's affidavit from his answer to Garcia's Motion for Summary Judgment, which we have previously discussed.

Appellants contend that they are entitled to a partial summary judgment for $1,275,-000.00 [1] claiming that all but the first employment contract are presumed fraudulent. They claim that Garcia is estopped from asserting the defense of accord and satisfaction because he was acting in a fiduciary and attorney-client relationship and, further, that the defense of accord and satisfaction is unavailable because the transaction was inherently unfair and they were unlawfully and fraudulently coerced into cashing Garcia's proposed settlement check.

The trial court granted Garcia's motion for summary judgment and denied that of the Robinsons.

Appellants offer four theories for the proposition that the granting of Garcia's motion for summary judgment was error. The first three reasons attack the amendments to the contract employing Garcia as their attorney. They contend that the alterations are presumed fraudulent and there is no evidence to rebut the presumption, that there was no consideration for the alterations and that the alterations were induced by fraud, overreaching and undue influence. The fourth theory presented by appellants is that there was no accord and satisfaction because the amount they received was not within the disputed amount of the fee and the cashing of the check was the result of fraud, overreaching and undue influence.

---

1. Presumably their calculation of the difference between $6,250,000 and the amount they received from Garcia.

As previously stated, appellants have not presented, either to the trial court or this Court, the issue of whether the Uniform Commercial Code applies to a full-payment check. In *Vawter v. Garvey*, 786 S.W.2d 263, 264 (Tex.1990), our Supreme Court, in a per curiam opinion, stated:

> A court of appeals may not reverse a trial court's judgment in the absence of properly assigned error. [citations omitted] Furthermore, Rule 52(a) of the Texas Rules of Appellate Procedure provides '[i]n order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling.'

*Id.* at 264; *see also San Jacinto River Auth. v. Duke*, 783 S.W.2d 209 (Tex.1990).

Accordingly, I believe this case should only be considered in light of the matters presented to us for review. These are contained in point of error number one, previously set out. These matters will now be reviewed.

The doctrine of accord and satisfaction is based upon an agreement, express or implied, to discharge a previous obligation in a manner other than originally agreed; it is the tender of alternative satisfaction upon the condition that acceptance discharges the underlying obligation. *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1970). It is distinguished from the doctrine of settlement and compromise, which refers to the conclusion of a disputed or unliquidated claim, and attendant differences between the parties, through a contract in which they agree to mutual concessions to avoid resolving their controversy through a course of litigation. Conversely, accord and satisfaction refers to an agreement between parties, one of whom has a right of action against the other, when the former accepts some performance by the latter in satisfaction of the right of action. The right of action may consist of a claim that is either liquidated or unliquidated, disputed or undisputed. The performance so accepted by the holder of the right of action must be different from that which might be legally enforced. The word "accord" refers to the agreement; the word "satisfaction" refers to the performance of the agreement, given and accepted in lieu of the right of action. *See Priem v. Shires*, 697 S.W.2d 860, 863 n. 3 (Tex.App.—Austin 1985, no writ). To establish the defense of accord and satisfaction, there must be an unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation, and when meeting of the minds rests upon implication, the facts proved must irresistibly point to such a conclusion. *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex.1969).

Here, there is no question that there was a dispute between the parties concerning the division of the proceeds of the underlying lawsuit which gave appellants a right of action against Garcia,[2] that Garcia offered his check to appellants as an "accord" and in full satisfaction of the dispute between the parties, and that appellants accepted the check tendered.

An accord and satisfaction is considered a substitute contract complete within itself and it therefore must be based upon a consideration the same as any other contract. *Grindstaff v. North Richland Hills Corp. No. 2*, 343 S.W.2d 742, 744 (Tex.Civ. App.—Fort Worth 1961, writ ref'd n.r.e.). Appellants do not claim that the fact that they added the qualifying phrase "[e]xcept for disputed attorney's fees and related claims, Cause No. 87–35582" to the check before negotiating it prevents the transaction from being an accord and satisfaction. They do not question appellee's reliance on *Pileco, Inc. v. HCI, Inc.*, 735 S.W.2d 561 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), and *Hixson v. Cox*, 633 S.W.2d 330 (Tex.App.—Dallas 1982, writ ref'd n.r. e.), which declare that the law is well settled that a disputed money demand may be discharged by the creditor's acceptance and negotiation of a check in an amount less than the claim, tendered on the condition that its acceptance be full and final satisfaction of the claim and that upon receipt of such a check the creditor is given the

---

2. The right of action exists regardless of which party would prevail in the action.

choice of either accepting the check as full payment or returning it, unaccepted, and suing for the full amount claimed.

Appellants argue at length about the duties of an attorney to exercise the utmost good faith and fair dealing in his relations with his client, as well as the importance of the trust a client is entitled to rely upon in his dealings with his lawyer. They cite numerous cases illustrating that the burden of establishing perfect fairness, adequacy and equity of a transaction with a client is on the attorney, based on the maxim that he who bargains from a position of trust and advantage with persons placing trust and confidence in him, must show that reasonable use has been made of the confidence. *See Archer v. Griffith*, 390 S.W.2d 735 (Tex.1965); *State v. Baker*, 539 S.W.2d 367, 374 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.). However, all of the cases referred to by appellants, as well as their statements and arguments, deal with the rights of the parties in connection with Garcia's employment as the Robinsons' attorney rather than the new contract evidenced by the accord and satisfaction. Appellants have referred us to no cases, nor have we found any, which stand for the proposition that a party is precluded from entering into an accord and satisfaction of a disputed contract because such contract was induced by fraud or undue influence. To the contrary, all claims arising out of express or implied contracts, irrespective of their subject matter, can be the subject of an accord and satisfaction, if the contract is not illegal. *Texas & P. Ry. Co. v. Poe*, 131 Tex. 337, 115 S.W.2d 591, 592 (1938). The confidential relationship of attorney and client had terminated before the Robinsons cashed the check. A confidential relationship does not continue to exist after one of the parties files suit against the other. *See Arrington v. Sneed*, 18 Tex. 140 (1857). I would therefore hold that whether the "alterations" to the contingent fee contract were without consideration, fraudulently entered into, or whether the "alterations" were the result of undue influence, does not preclude an accord and satisfaction, when the fiduciary relationship had terminated before the accord and satisfaction.

Appellants also contend that there was no accord and satisfaction of Garcia's obligations by the cashing of the check because 1) the amount of the check was not within the disputed amount of the fee and 2) the cashing of the check was the result of fraud, overreaching and undue influence on the part of Garcia.

The first of these positions is based upon the fundamental proposition that, since an accord and satisfaction is a contract, and an essential element of all contracts is consideration, the payment of a part of the debt which is undisputed is not sufficient to support a promise to accept the same in full payment of the debt, and does not bar the creditor's suit to recover the balance. *See Prather v. Citizens Nat'l Bank*, 582 S.W.2d 903, 906 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.). However, the defense of accord and satisfaction may be established by part payment of an unliquidated demand, and sufficient consideration for accord may arise out of a dispute as to the liability upon a liquidated claim. *Industrial Ins. Co. v. Finley*, 382 S.W.2d 100, 104 (Tex.1964). In our case, the parties were engaged in a dispute over the proper percentage of a contingent fee contract and, as pointed out in Garcia's letter of August 4, 1987, the check tendered did not include any fee for the $600,000.00 deficiency judgment forgiven by TCB–McAllen. I would hold that there was consideration for an accord and satisfaction.

Finally, appellants' summary judgment proof is not supported by evidence of fraud, overreaching or undue influence in connection with the cashing of the check. There was no fiduciary relationship between the Robinsons and Garcia at the time they cashed the check. An accord and satisfaction was established as a matter of law, and appellants have presented no evidence to raise a fact issue concerning fraud, duress and undue influence in the cashing of the settlement check. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex.1979). I would hold that appellants' first point of error be

overruled and affirm the judgment of the trial court.